(920 P.2d 450)

No. 73,569

In the Matter of the Marriage of JERRY PATTERSON, *Appellee*, and LUCY PATTERSON (now CUNNINGHAM), *Appellant*.

Opinion filed June 21, 1996.

*Jennifer A. Wagle*, of Arn, Mullins, Unruh, Kuhn, & Wilson, LLP, of Wichita, for the appellant.

*Sheila J. Floodman*, of Alexander, Floodman & Casey, Chartered, of Wichita, for the appellee.

Before PIERRON, P.J., MARQUARDT, J., and JAMES J. SMITH, District Judge, assigned.

PIERRON, J.: Lucy Cunningham, formerly Patterson, appeals the district court's failure to utilize the formula in the Kansas Child Support Guidelines (KCSG) for computing a child support payment for a combined gross monthly income exceeding the highest

amount shown in the child support schedules. She also raises issues concerning payment of past private education costs, payment of uninsured medical expenses, and the district court's denial of her request for attorney fees.

Jerry Patterson and Cunningham were divorced on November 14, 1985. They had two children, Jennifer, born April 10, 1980, and Stephanie, born March 6, 1985. The divorce decree incorporated a property settlement agreement between Patterson and Cunningham. The district court granted joint legal custody of the two children, with primary residential custody with Cunningham. Pursuant to the property settlement agreement, Patterson agreed to pay $750 per month in child support and the cost of private schooling of the two children, including college.

On September 11, 1989, Cunningham sought a child support increase based on Patterson's increased income and an increase in the expenses of raising the two children. At the time, Patterson had a monthly income between $7,500 and $8,000. He filed a list of proposed supplemental considerations where he reaffirmed his agreement to pay the private school tuition and expenses of the two children. The district court granted Cunningham's request and increased Patterson's child support payment, in accordance with the KCSG, to $1,500 per month. However, the order stated that Cunningham would be responsible for any private schooling expenses of the two children prior to college. Cunningham did not appeal the decision.

On November 17, 1992, Patterson filed a motion to decrease child support because he was now supporting another child born during his subsequent marriage. His proposed child support worksheet stated he had a monthly income of $12,500. In computing the child support, he used the number corresponding to support of two children, ages 7-15, in the highest gross monthly income ($8,400) on the three-child family schedule. Cunningham filed a motion seeking to enforce the September 11, 1989, order granting child support in the amount of $1,500 per month based on Patterson's income and his ability to pay. In an order dated November 30, 1992, the district court, utilizing Patterson's worksheet, granted

the motion and decreased his child support payment to $1,224 per month. No appeal was taken.

On July 14, 1994, Cunningham filed a motion for an order increasing child support commensurate with the updated child support guidelines effective August 1, 1994. Patterson's monthly income was now in excess of $26,000—over $300,000 a year. Cunningham also sought a qualified medical support order and reimbursement for private schooling expenses of the two children pursuant to the property settlement agreement and divorce decree. Cunningham alleged that Patterson had failed and refused to pay any of the private schooling expenses since the divorce.

In response, Patterson filed a motion which requested the court to set his child support payment at the top of the child support schedules. Patterson's motion also stated that his request had historically been the practice in Sedgwick County; that there were no extraordinary needs in this case justifying child support beyond the highest amount on the guidelines; and that to hold otherwise would result in a windfall to Cunningham.

On August 30, 1994, the district court increased Patterson's child support obligation to $1,721 per month, consistent with the highest monthly income on the child support guidelines. Patterson and Cunningham were ordered to execute a qualified medical child support order. For uninsured medical expenses, Patterson was responsible for the first $1,000 and after that he would pay 75% and Cunningham would pay 25%. The district court ordered Patterson to pay all private schooling expenses as agreed upon in the divorce decree, bringing his monthly support obligation to $1,981, and to reimburse Cunningham for the private schooling expenses for the past 5 years.

Patterson filed a motion for clarification of ruling and/or reconsideration of the district court's order. He requested that the district court modify its order requiring him to reimburse Cunningham for the previous 5 years of private schooling expenses. Patterson argued the September 11, 1989, order specifically ordered Cunningham to pay these expenses.

Cunningham requested that the district court enforce the parties' property settlement agreement incorporated in the divorce

decree and reconsider its ruling not to extrapolate the amount of child support beyond the top of the child support schedules. She also filed a motion to set aside the portion of the September 11, 1989, order modifying the property settlement agreement and the payment of private schooling expenses. Cunningham argued the district court lacked subject matter jurisdiction and therefore the judgment was void.

The district court set aside the August 30, 1994, judgment awarding Cunningham past private schooling expenses. The court based its decision upon the September 11, 1989, order which provided that Patterson was not responsible for such costs. However, the court ordered Patterson to pay the private schooling expenses from the 1994-95 school year forward. The court also declined to reconsider a child support payment in excess of the highest amount in the child support schedules, but offered to reconsider its decision if Cunningham could prove at an evidentiary hearing that there were extraordinary expenses or special needs in raising the two children.

Cunningham's motion to set aside the September 11, 1989, judgment was also denied. The court found the judgment modified Patterson's child support payment and relieved him of his obligation to pay the private schooling expenses. The court pointed out that Cunningham did not appeal that judgment, and child support and educational expenses are subject to modification by the court during the child's minority.

This appeal presents a question of first impression. Cunningham contends the district court abused its discretion in failing to follow the child support guidelines by not using the extrapolation formula to figure the child support payment since the combined monthly income was beyond the highest amount in the child support schedules. Cunningham contends the amount computed by this formula presents a rebuttable presumption of the child support payment. Therefore, a person requesting an increase or decrease from that amount, in this case Patterson, would have the burden of coming forward and rebutting the presumed paymentin order to obtain a reduction.

The standard of appellate review of a district court's order determining the amount of child support is abuse of discretion. *In re Marriage of Schletzbaum*, 15 Kan. App. 2d 504, 505, 809 P.2d 1251 (1991). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the trial court. *In re Marriage of Wade*, 20 Kan. App. 2d 159, 168, 884 P.2d 736 (1994) *rev. denied* 256 Kan. 995 (1995).

The 1994 KCSG, Administrative Order No. 90 (1995 Kan. Ct. R. Annot. 83), were adopted by the Kansas Supreme Court and became effective August 1, 1994. The underlying intent of the child support guidelines is explained in § II.A. as follows:

"The purpose of child support is to provide for the needs of the child. The needs of the child are not limited to direct needs for food, clothing, school, and entertainment. The child support is also to be used to provide for housing, utilities, transportation, and other indirect expenses related to the day-to-day care and well-being of the child." 1995 Kan. Ct. R. Annot. 84.

The child support guidelines clearly address the situation presented in the case at bar. Section IV.C., entitled "Income Beyond the Child Support Schedule," provides:

"If the Combined Child Support Income exceeds the highest amount shown on the schedules, the Court should exercise its discretion by considering what amount of child support should be set in addition to the highest amount on the Child Support Schedule. For the convenience of the parties, a formula is contained at the end of each child support schedule to compute the amount that is not set forth on the schedules." 1995 Kan. Ct. R. Annot. 88.

An additional step-by-step example is then provided to demonstrate the use of the formula.

Prior to the Kansas Supreme Court's adoption of the 1994 KCSG, the child support schedules did not contain the extrapolation formula or the language that the formula was for the convenience of the parties. The 1992 KCSG, Administrative Order No. 83 (1993 Kan. Ct. R. Annot. 71), merely provided in § IV.C.: "If the Combined Child Support Income exceeds the highest amount shown on the schedules, the Court should exercise its discretion by considering what amount of child support should be set in ad-

dition to the amount on the Child Support Schedule." 1993 Kan. Ct. R. Annot. 75.

The question for our consideration is whether this formula and process create a rebuttable presumption as to the amount of child support that should be awarded in situations where the combined incomes exceed the usual schedule. We believe they do not.

Cunningham states the district court made it clear that extrapolation was not going to be used in Sedgwick County absent extraordinary expenses in raising the children. She argues this puts her in the position of rebutting the presumption that child support should never be higher than the highest amount on the schedules. She suggests if this were the case, the framers of the guidelines would not have included the extrapolation formula in the guidelines. Furthermore, Cunningham directs the court's attention to the fact that nowhere in the guidelines does it mention a required showing of special needs in order to use the formula.

Patterson argues the guidelines do not state the use of the formula is mandatory. He contends the court is not deviating from the guidelines because it followed the guidelines to the top of the schedule. Given that extrapolation is discretionary, the trial court was not required to make specific findings for deviation. There are five factors which Patterson believes demonstrate that the district court did not abuse its discretion: (1) Extrapolation is not mandatory, (2) he is paying the highest amount on the support schedules, (3) the children do not have any special needs, (4) their lifestyle has not changed since the divorce, and (5) Cunningham has remarried and is not working.

Professor Linda Henry Elrod served as Vice-Chair of the Kansas Commission on Child Support and on the subcommittee which drafted the original child support guidelines proposal in Kansas. In her article *Kansas Child Support Guidelines: An Elusive Search for Fairness in Support Orders*, 27 Washburn L.J. 104 (1987), Professor Elrod discussed the problems associated with putting a cap on the highest combined monthly income in the child support schedules:

"A final question that caused considerable debate was whether there should be a cap on the schedule. The subcommittee felt that judges should follow the general

principle that children have a right to share in both parents' standard of living regardless of income. Does this mean, however, that if the parent earns income of a million dollars, the child is entitled to that much as 'child support'? The problem with requiring child support in amounts far in excess of the usual expenditures on children is that it effectively transfers most of the discretionary spending on children to the custodial parent. Some states limit application of the schedule to certain income levels, while other states do not. Dr. Terrell's economic data supports percentage amounts above the charted figures. At least one court, however, has held that child support guidelines used without limitations are unrealistic and unfair when both parents have substantial income. The Kansas guidelines include a table which stops at $8400 per month gross income. The trial court judge's discretion will govern amounts above the charted figures. Hopefully, parents with incomes above the charted amounts will set up trusts or educational funds to provide equitably for their children." 27 Washburn L.J. at 124-25.

Practitioners dealing with situations such as this sometimes refer to the "Three Pony Rule." That is, no child, no matter how wealthy the parents, needs to be provided more than three ponies.

The court in *In re Marriage of Lee*, 246 Ill. App. 3d 628, 615 N.E.2d 1314, *reh. denied* 153 Ill. 2d 560 (1993), discussed the problem of determining child support in high-income families. Illinois follows a flat percentage rate, rather than a schedule, for determining the amount of child support. Ill. Comp. Stat. ch. 750, 5/505(a)(1) (1994).

"Determining the amount of child support to be paid by a high-income parent is a difficult exercise for the trial court. Where the individual incomes of both parents are more than sufficient to provide for the reasonable needs for the parties' children, taking into account the life-style the children would have absent the dissolution, the court is justified in setting a figure below the guideline amount. (*In re Marriage of Bush* (1989), 191 Ill. App. 3d 249, 260, 547 N.E.2d 590, 596.) In *Bush*, we reversed an award of 20% [pursuant to Illinois guidelines] of the noncustodial parent's income where such an award was approximately $30,000 per year and both parents were doctors and earned significant incomes. We noted a reasonable basis for high support payments may be warranted in the case of high medical expenses or expensive private education; however, we found *Bush* was not such a case. *Bush*, 191 Ill. App. 3d at 260-61, 547 N.E.2d at 596.

In fixing the child support obligation of a high-income parent, the trial court must balance competing concerns. On the one hand, the trial court should not limit the amount of child support to the child's 'shown needs,' because a child is not expected to live at a minimal level of comfort while the noncustodial parent is living a life of luxury. (*People ex rel. Graham v. Adams* (1993), 239 Ill. App. 3d 643, 645, 608 N.E.2d 614, 616.) The trial court must consider the standard of

living the child would have enjoyed absent parental separation and dissolution. (*Bush*, 191 Ill. App. 3d at 261, 547 N.E.2d at 596.) On the other hand, child support payments are not intended to be windfalls, but rather adequate support payments for the upbringing of the children. *Bush*, 191 Ill. App. 3d at 261, 547 N.E.2d at 596-97." 246 Ill. App. 3d at 643-44.

The KCSG provides that "[j]udges and hearing officers must follow the guidelines." 1995 Kan. Ct. R. Annot. 83. Cunningham cites several cases demonstrating it is mandatory that a judge or hearing officer comply with the child support guidelines. In *Schletzbaum*, 15 Kan. App. 2d 504, the district court ignored the amount due under the child support guidelines and ordered a payment of approximately $100 less than the amount stated in the guidelines. The trial court made no findings setting forth its reasons for deviating. In addressing the lack of specific findings, the *Schletzbaum* court stated: "The guidelines are mandatory and must be complied with by the trial court when ruling on child support matters to which the guidelines are applicable." 15 Kan. App. 2d at 506. This court reversed the lower court's decision, finding that the child support guidelines require the trial court either award the amount established by the guidelines or use § E of the worksheet to make written findings or specific findings on the record as to the reasons for deviating. 15 Kan. App. 2d at 506-07. See *Shaddox v. Shoenberger*, 19 Kan. App. 2d 361, Syl. ¶¶ 1, 2, 869 P.2d 249 (1994).

*Schletzbaum* and *Shaddox* are distinguishable. They dealt with deviations from the presumptive payment established in the support schedules. Furthermore, neither involved a monthly income higher than that found on the support schedules and would not have required the use of the extrapolation formula.

Cunningham cites two other cases *Baker v. Baker*, 866 P.2d 540 (Utah App. 1993), and *Anonymous v. Anonymous*, 631 So. 2d 1030 (Ala. Civ. App. 1993). She states the Utah Court of Appeals, when ruling on this issue, held:

"[T]he court shall establish support after considering all relevant factors, including but not limited to:

(a) the standard of living and situation of the parties;

(b) the relative wealth and income of the parties;

(c) the ability of the obligor to earn;

(d) the ability of the obligee to earn;

(e) the needs of the obligee, the obligor, and the child;

(f) the ages of the parties; and

(g) the responsibilities of the obligor and the obligee for the support of others." 866 P.2d at 545.

Cunningham's so-called "holding" in *Baker* is actually a reproduction of the language in Utah Code. Ann. § 78-45-7(3) (1995 Supp.). The beginning of that statute, which Cunningham omits, reads: "If the court finds sufficient evidence to rebut the guidelines, the court shall . . . ." Utah Code. Ann. § 78-45-7(3) (1995 Supp.) The court in *Baker* actually held that the amount of the child support was just and appropriate under the circumstances. 866 P.2d at 545. With regard to the factors cited by Cunningham, the *Baker* court held:

"However, by the very language of that section [Utah Code. Ann. § 78-45-7(3) (1995 Supp.)], a trial court need consider these enumerated factors only when there is sufficient evidence to rebut the guidelines set forth in section 78-45-7.14. In the case at bar, since the award of child support was beyond the amount listed in the statutory guidelines, neither party's proposed award even addressed, much less rebutted, the guidelines. Accordingly, the trial court did not err in declining to address the factors listed in section 78-45-7(3)." 866 P.2d at 545.

Utah's Uniform Civil Liability for Support Act is very similar to the KCSG in dealing with child support in high-income families. Utah Code Ann. § 78-45-7.12 (1995 Supp.) states:

"If the combined adjusted gross income exceeds the highest level specified in the table, an appropriate and just child support amount shall be ordered on a case-by-case basis, but the amount ordered may not be less than the highest level specified in the table for the children due support."

Cunningham also cites *Anonymous*, 631 So. 2d 1030. However, *Anonymous* only found it was not an abuse of discretion to award support in excess of the child support schedule. 631 So. 2d at 1032.

Pursuant to the language of § IV.C. of the KCSG, we find the district court has wide discretion in determining the amount of child support when the monthly income of one of the parties exceeds the highest amount in the child support schedules. Additionally, the formula found at the end of each of the child support

schedules is merely for the convenience of the parties and the district court and does not create a rebuttable presumption of the amount of child support.

In this case, the district court stated that unless Cunningham was able to show special needs of the minor children, the court would not award child support higher than the highest amount in the support schedules. We note the district court had a very generous definition of special needs, including medical needs, physical or mental handicap, counseling needs, unique talents, or educational needs. However, we are concerned with the district court's seemingly flat declaration that extrapolation would not even be considered absent some special showing of need.

While the district court has very wide discretion in this area, it does not have the discretion to refuse to consider exercising it. We realize, as a practical matter, that requiring the district court to consider the extrapolation tables without making them presumptive may have very little if any impact on the decision-making process. However, the guidelines require discretionary consideration of them, and we so order.

Next, Cunningham argues the September 11, 1989, order, where the district court directed her to be responsible for the private schooling costs, is a void judgment. She concedes that pursuant to K.S.A. 1995 Supp. 60-1610(b)(3), the district court has continuing jurisdiction to modify orders pertaining to custody, support, or education of the minor children. However, she argues this is only if the parties have not otherwise reached an agreement in their separation agreement which had been incorporated in their journal entry and divorce decree.

Kansas law is clear that a property settlement, once accepted by the court and incorporated into the divorce decree, may not generally be modified by the court except as prescribed by the agreement or subsequent consent by the parties. *Miller v. Miller*, 6 Kan. App. 2d 193, 194-95, 627 P.2d 365 (1981). However, K.S.A. 1995 Supp. 60-1610(b)(3) unquestionably provides that the district court retains jurisdiction to modify issues dealing with custody, support, or education of the minor children. *Beard v. Beard*, 12 Kan. App. 2d 540, Syl. ¶ 1, 750 P.2d 1059 (1988).

K.S.A. 1995 Supp. 60-1610(b)(3) explains as follows:

"If the parties have entered into a separation agreement which the court finds to be valid, just and equitable, the agreement shall be incorporated in the decree. The provisions of the agreement on all matters settled by it shall be confirmed in the decree *except that any provisions for the custody, support or education of the minor children* shall be subject to the control of the court in accordance with all other provisions of this article. Matters settled by an agreement incorporated in the decree, *other than matters pertaining to the custody, support or education of the minor children*, shall not be subject to subsequent modification by the court except: (A) As prescribed by the agreement or (B) as subsequently consented to by the parties." (Emphasis added.)

"Interpretation of a statute is a question of law. An appellate court's review of a question of law is unlimited." *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). Two rules of statutory interpretation are relevant to our examination of K.S.A. 1995 Supp. 60-1610(b)(3). "It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained." *City of Wichita v. 200 South Broadway*, 253 Kan. 434, Syl. ¶ 1, 855 P.2d 956 (1993). "When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be." *Martindale v. Tenny*, 250 Kan. 621, Syl. ¶ 2, 829 P.2d 561 (1992).

Cunningham quotes *Bair v. Bair*, 242 Kan. 629, 634, 750 P.2d 994 (1988), where the court stated:

" 'A party who seeks and obtains from a trial court its approval of a separation agreement and the incorporation thereof in a decree of divorce and thereafter accepts the benefits of the decree cannot avoid its disadvantages by a motion to modify *except as to those matters over which the court has continuing jurisdiction.*' " (Emphasis added.) (Quoting *Spaulding v. Spaulding*, 221 Kan. 574, Syl. ¶ 1, 561 P.2d 420 [1977]).

*Bair* and *Spaulding* considered issues surrounding the modification of alimony payments, not child support, and are not relevant to this case. Furthermore, utilizing the language of *Bair*, K.S.A. 1995 Supp. 60-1610(b)(3) provides that the district court has continuing jurisdiction over a minor child's education.

Cunningham's interpretations of K.S.A. 1995 Supp. 60-1610(b)(3) are clearly erroneous. The statute states in plain and unambiguous language that the district court continues to have jurisdiction over educational matters of a child until he or she reaches majority. The fact that the district court on September 11, 1989, was not directly presented with the question of private schooling costs does not alter the district court's jurisdiction over such matters.

We are fully aware that in some cases, perhaps even the instant one, a party may compromise on other areas in order to secure particular provisions for child support and education. A modification of child support and education provisions by the court may therefore indirectly affect the delicate balance the parties struck in their property settlement agreement. While 60-1610(b)(3) may cause some difficulties in such situations, and require more thought and planning in the drafting of property settlement agreements, its mandate is clear. The trial court had jurisdiction to modify the educational provisions of minor children.

Next, Cunningham submits the district court abused its discretion by ordering her to pay 25% of the uninsured medical expenses after the first $1,000. She argues the child support guidelines provide that all necessary medical expenses which are not covered by insurance should be assessed to the parties in accordance with the parties' proportional share as established in the child support worksheets. Since she has no income, Cunningham argues the district court abused its discretion by requiring her to pay any of the medical expenses without making any specific findings on the record or in the journal entry as to why she should. Cunningham argues that since Patterson is only paying approximately half of what he would have paid had the court used the extrapolation formula to figure his child support payment, and since his current child support payment is only approximately 6% of his gross monthly income, it is inequitable and an abuse of discretion to order her to pay any of the medical expenses.

The child support guidelines state in § V.D.4.: "The court shall provide that all necessary medical expenses (including dental, orthodontic, optometric, etc.) which are not covered by insurance

(including deductible) should be assessed to the parties in accordance with the parties' proportional share on Line D.2. of the worksheet." 1995 Kan. Ct. R. Annot. 94.

Patterson states the child support guidelines use the language "should be assessed" in accordance with the proportional share and therefore a mandatory rule is not created. He suggests if the guidelines used words like "shall" or "must" it would be mandatory. Patterson argues it was clear the district court felt it was necessary to make Cunningham responsible for these medical expenses in order to prevent frivolous medical visits. He also alleges the district court imputed income to Cunningham since she was not working. He argues it is clear that $1,000 of uninsured medical expenses per year is high for two healthy children and that anything exceeding that amount would be unusual.

The record does not contain any of the district court's rationale as to why it ordered the medical expenses to be divided in this manner. We are also concerned that the record lacks a child support worksheet. "Child support worksheets approved by the court shall be filed in every case where an order of child support is entered." *In re Marriage of Beacham*, 19 Kan. App. 2d 271, Syl. ¶ 1, 867 P.2d 1071 (1994). The appellate record does not contain a transcript of the August 30, 1994, hearing where the court made the order, nor is there any evidence in the written order as to why Cunningham should be responsible for 25% of the uninsured medical expenses over $1,000. There may be good cause, but we have no way to know. We must remand for preparation of a worksheet and appropriate rationale.

Finally, Cunningham makes a similar argument concerning the district court's denial of her request for attorney fees. K.S.A. 1995 Supp. 60-1610(b)(4) provides that costs and attorney fees may be awarded to either party in domestic matters "as justice and equity require." "It is within the discretion of a trial court to award attorney fees when motions are filed to modify child custody orders or child support orders." *Dunn v. Dunn*, 3 Kan. App. 2d 347, Syl. ¶ 2, 595 P.2d 349 (1979). Pursuant to K.S.A. 1995 Supp. 60-1610(b)(4), the district court is vested with wide discretion to determine both the amount and the recipient of an allowance of at-

torney fees. See *Baker v. Baker*, 217 Kan. 319, 321, 537 P.2d 171 (1975). Upon review of an award of attorney fees, the appellate court does not reweigh the testimony or evidence presented nor reassess the credibility of witnesses. See *Wiles v. Wiles*, 200 Kan. 574, 576, 438 P.2d 81 (1968). "Where the exercise of discretion is arbitrary and not judicial, and the judgment is inequitable, it will be set aside." *St. Clair v. St. Clair*, 211 Kan. 468, 499, 507 P.2d 206 (1973).

Patterson does not directly address Cunningham's request for attorney fees. Rather, he argues it is clear that each of the issues raised on appeal are clearly supported by statutes and cases in his favor and that Cunningham's request for additional hearings and this appeal are not meritorious and have caused him unnecessary attorney fees. He also states that at the August 30, 1994, hearing, where the district court ordered him to reimburse Cunningham for the private schooling expenses, Cunningham did not mention the September 11, 1989, order requiring her to pay those expenses. Patterson argues that Cunningham's new attorney violated MRPC 3.3(d) (1995 Kan. Ct. R. Annot. 311) when she became aware of the September 11, 1989, order and failed to bring it to the attention of the district court. Therefore, Patterson argues he should be awarded attorney fees since he had to take the proper remedial measures.

We do not consider Patterson's requests for attorney fees for this appeal. He has failed to follow the necessary procedures in Kansas Supreme Court Rules 5.01 (1995 Kan. Ct. R. Annot. 26) and 7.07 (1995 Kan. Ct. R. Annot. 44) for such a request. Nor do we address his request for attorney fees for his motion for clarification of ruling and/or reconsideration based on the September 11, 1989, order requiring Cunningham to pay the private schooling expenses.

In making its ruling that Patterson was not required to reimburse Cunningham for the expenses, the district court stated that neither party was responsible for the other party's attorney fees. Patterson failed to appeal this decision or file a cross-appeal in the present case. The notice of cross-appeal must be filed within 20 days after notice of appeal has been served. K.S.A. 60-2103(h). "We have

held failure to file a cross-appeal precludes the appellate court from reviewing the district court's rulings complained of by appellees." *City of Lenexa v. Board of Johnson County Comm'rs*, 237 Kan. 782, 784, 703 P.2d 800 (1985).

The district court did not abuse its discretion by failing to award attorney fees to either Patterson or Cunningham for the motion to reconsider. Patterson argues it was Cunningham's error for not bringing to the attention of the court the September 11, 1989, order requiring her to pay the private schooling expenses. Cunningham argues Patterson's failure to present the September 11, 1989, order to the court resulted in a second hearing on an issue that should have been addressed at the first hearing. We also note that the reason for the confusion appears to be that both Cunningham and Patterson had changed attorneys in the period between September 1989 and August 1994.

The ultimate question is whether the substantial disparity of income is sufficient reason to require Patterson to pay the attorney fees. The trial judge is considered an expert in determining attorney fees. See *St. Clair*, 211 Kan. at 499-500. We cannot say the district court abused its discretion in the case.

We reverse and remand with instructions that the district court consider the use of the extrapolation formula and prepare a child support worksheet and appropriate findings concerning medical expenses. We affirm on all other issues.

Affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.