(2) Respondent shall pay a fine of $250.00 to the Kentucky Bar Association. The Court notes that respondent tendered a check for $350.00 payable to the Kentucky Bar Association with her response to this Court's show cause order, and the Court has forwarded this check to the Kentucky Bar Association. As respondent gives no explanation for the purpose for which this check was tendered, however, this Court cannot determine whether this check represents funds from which this fine may be paid. If respondent owes no other money to the Kentucky Bar Association, the Court authorizes the Association to apply a portion of these funds towards her fine and refund the balance of $100.00 to her. If, however, these funds represent payment for some other matter, respondent must pay the full $250.00 within twenty (20) days of the date of this order.

(3) Respondent may not apply for a non-hardship time extension pursuant to SCR 3.667(2) for completion of her Continuing Legal Education requirements in either the 2000–2001 or 2001–2002 educational year.

LAMBERT, C.J.; COOPER, GRAVES, KELLER, STUMBO and WINTERSHEIMER, JJ., concur.

JOHNSTONE, J., dissents and would impose a short suspension.

ENTERED: March 22, 2001.
/s/ Joseph E. Lambert
CHIEF JUSTICE

Donald R. DOWNING, Appellant,

v.

Sharon A. DOWNING, Appellee.

No. 1999–CA–003086–MR.

Court of Appeals of Kentucky.

April 6, 2001.

Diana L. Skaggs, Sandra Ragland, Diana L. Skaggs & Associates, Louisville, KY, for Appellant.

John H. Helmers, Jr., Rebecca L. Adams, Howard & Helmers, PLC, Louisville, KY, for Appellee.

Before HUDDLESTON, KNOPF, and MILLER, Judges.

## OPINION

KNOPF, Judge:

Donald R. Downing appeals from a March 31, 1999, order of the Jefferson Family Court which raised his child support obligation for his two children from $2,112.00 per month to $3,475.00 per month based upon a substantial increase in his income. He also appeals from a November 17, 1999, order which denied his motion to reduce child support based upon a reduction in his income. The primary question presented in this appeal can be stated as follows: Where the combined parental gross income exceeds the highest level set out in the child support guidelines, may a trial court consider, among other factors, a mathematical extrapolation of the guidelines in calculating the appropriate level of child support? From our review of the record, we conclude that the trial court gave too much weight to its projection of the child support guidelines. In the absence of sufficient findings regarding the other relevant factors, we conclude that the trial court's method of calculating child support was an abuse of discretion. However, the trial court's findings regarding Donald's income are not clearly erroneous. Hence, we affirm in part, reverse in part, and remand for additional hearing and findings.

The appellant, Donald R. Downing (Donald) and the appellee, Sharon A. Downing (Sharon), were married in 1981. Two children were born of the marriage: Earon L. Downing, II (DOB 12/15/83) and Sean L. Downing (DOB 8/7/86). On April 27, 1992, Sharon filed a petition for dissolution of marriage in the Jefferson Family Court. The court granted the decree of dissolution on July 8, 1992. The decree incorporated by reference a property settlement agreement between the parties. Among other provisions, Sharon received sole custody of the two children. Donald agreed to pay Sharon $400.00 per week in child support, and to pay all of the children's health care costs. In addition, Sharon received the marital residence and her automobile, with Donald responsible for paying any debt on these items.

In 1994, Sharon filed a motion to increase Donald's child support obligation and to require Donald to pay Earon's tutoring expenses. A hearing was conducted before the Domestic Relations Commissioner (DRC) in July 1994. The DRC found that Donald is the sole owner of a collection agency known as Independent Collectors, Inc, (I.C.) and that he had a total income of $17,491.00 per month from that business. Based upon the children's extraordinary medical and psychological expenses, as well as the fact that the parties' combined income exceeded the child support guidelines, the DRC recommended that the total monthly support for the children be set at $2,200.00 per month, of which Donald would be responsible for paying $2,112.00 per month. The trial court overruled Sharon's exceptions to the DRC's report, and entered an order rais-

ing Donald's child support obligation as recommended.

In July 1998, Sharon filed another motion to increase child support, pointing to a substantial increase in Donald's income.[1] The matter was referred to a DRC, who conducted a hearing and thereafter issued a report on February 8, 1999. In reviewing Sharon's motion to increase child support, the DRC found that, by the end of 1997, Donald's monthly income had increased to $57,000.00, almost $40,000.00 per month more than he was earning in 1994. In the DRC's recommendations he noted the difficulties in setting child support when the parents' income greatly exceeds the highest level set in the child support guidelines:

> When child support is set outside of the Guidelines, the Court is required to exercise discretion in arriving at a fair and equitable amount of support. In exercising such discretion, the finder of fact may consider the needs of the children.

In this case, there was very little evidence heard dealing with the actual needs of the children. Also, the finder of fact may consider the lifestyle the children would have enjoyed had the parties continued to be together and married. The finder of fact may also consider a "projection" of the Guidelines.

A review of the Child Support Guidelines under the column headed for two children indicates that at the high income end, child support increases at the rate of about 4% of combined income. Taking into account the Respondent's income and the Petitioner's income using $57,000.00 per month for the Respondent and $1,500.00 per month for the Petitioner, and projecting the Guidelines, the base monthly support would calculate to $3,584.00 per month of which the Respondent would have a 97% responsibility. This calculates to $3,475.00 per month.[2]

---

1. At the same time, Sharon filed several other motions relating to support of the children. She filed a motion to require Donald to fulfil his oral promise to pay the costs of the children's private education. Following the hearing, the DRC concluded that Sharon had not proven with reasonable certainty the terms of any agreement by Donald to pay for the children's private high school education. Sharon also sought to require Donald to participate in family counseling with the children and to pay the costs of the counseling. Following the hearing, the DRC included a recommended order requiring Donald to participate in and to pay for the children's counseling. However, the trial court struck this portion of the DRC's tendered order.

2. In reaching this calculation, the DRC applied the child support guidelines to the first $15,000.00 of the parties' combined monthly income. The DRC set additional child support by multiplying the excess income by 4%, as follows:

| | | |
|---|---|---|
| | $58,500.00 | combined monthly income of the parties |
| − | $15,000.00 | highest income provided by the Guidelines |
| | $43,500.00 | amount the parents' income exceeds the Guidelines |
| × | .04 | percentage applied to income in excess of the Guidelines |
| | $ 1,740.00 | projected base monthly support obligation for two children for the amount of income exceeding the Guidelines |
| + | $ 1,844.00 | base monthly support obligation for two children for parents' combined monthly income of $15,000.00 |
| | $ 3,584.00 | projected base monthly support obligation for two children with combined parental monthly income of $58,500.00 |

I will recommend the child support be increased to $3,475.00 per month effective July 30, 1998.[3]

Both Sharon and Donald filed exceptions to the DRC's recommendation. The trial court overruled the exceptions and increased Donald's child support obligation as recommended by the DRC.

In response to Sharon's motion to increase child support, Donald filed a motion to decrease his child support. He presented evidence that I.C. lost its collections contract with the local cable company and was no longer able to generate the high incomes to which he had become accustomed. While the DRC agreed that there was some evidence to support Donald's claim that his income from the corporation had decreased, the DRC was not entirely convinced that Donald's reduction in income was a "substantial and continuing change" which would warrant a reduction in his child support obligation. The DRC also noted that Donald had made similar claims in 1994. As a result, the DRC reserved a ruling on Donald's motion.

Following an additional hearing, the DRC concluded that Donald's income had substantially decreased in the latter part of 1998. "However, in 1999, it appears that his income train has fully come up to steam and it further appears that the corporation will have gross receipts to exceed the highest previous year of 1997." [4] Thereafter, the trial court accepted the DRC's recommendation that Donald's motion for a reduction in child support be denied. This appeal followed.

Donald first argues that the trial court disregarded the evidence that his income had decreased. He contends that the DRC should have accepted the testimony and documentary evidence which showed that his income declined substantially after 1998. For this reason, he asserts that the trial court erred in basing the modification of his child support obligation on income he no longer receives. Furthermore, he also argues that he was entitled to a reduction of his child support since his income has now been reduced. We disagree.

After extensively reviewing the documentary and other evidence, the DRC determined that while Donald's income from I.C. decreased during 1998, his long-term earning capacity has not changed significantly. The DRC further expressed skepticism at Donald's claims that his business was experiencing difficulties upon considering that he had made similar, unsupported claims at the 1994 hearing. Based upon the total circumstances and the financial information provided at the hearing, the DRC concluded that Donald's reduced income was not a "substantial and continuing change" which would justify a reduction in his child support obligation under KRS 403.213.[5] The trial court conducted its own hearing on Donald's exceptions to the DRC's report and found that the DRC did not abuse his discretion in determining Donald's income.

■■■ The factual findings of a commissioner, to the extent that the court adopts them, shall be considered as findings of the court. Findings of fact shall not be set aside unless they are clearly erroneous,

| × | .97 | Donald's percentage of parents' combined monthly income |
| --- | --- | --- |
| | $ 3,476.48 | Donald's projected child support obligation |

**3.** Record on Appeal [ROA] at 113–114.

**4.** ROA at 159.

**5.** *See also Snow v. Snow*, Ky.App., 24 S.W.3d 668, 673 (2000).

and due regard shall be given to the opportunity of the court to judge the credibility of witnesses.[6] We find no basis in the record to disturb the trial court's findings of fact. Indeed, even viewing the evidence in the light most favorable to Donald, his current income is still considerably higher than it was in 1994. Thus, we agree with the trial court that there was no basis to decrease his child support below the amount set in 1994.

Donald's primary argument is that the manner in which the trial court raised his child support obligation was an abuse of discretion. He contends that the trial court erred by applying a projection or a linear extrapolation of the child support guidelines as its main basis for setting the amount of child support. In addition, he complains that the amount of child support set by the trial court was not based on any evidence regarding the reasonable needs of the children. As a result, he asserts that the trial court acted arbitrarily by increasing his child support.

The child support guidelines set out in KRS 403.212 serve as a rebuttable presumption for the establishment or modification of the amount of child support. Courts may deviate from the guidelines only upon making a specific finding that application of the guidelines would be unjust or inappropriate.[7] However, KRS 403.211(3)(e) specifically designates that "combined monthly adjusted parental gross income in excess of the Kentucky child support guidelines" is a valid basis

for deviating from the child support table. Furthermore, the trial court may use its judicial discretion to determine child support in circumstances where combined adjusted parental gross income exceeds the uppermost level of the guidelines table.[8] The child support table ends at the $15,000.00 per month level, so deviation from the guidelines is clearly appropriate in this case.

 Kentucky trial courts have been given broad discretion in considering a parent's assets and setting correspondingly appropriate child support.[9] A reviewing court should defer to the lower court's discretion in child support matters whenever possible.[10] As long as the trial court's discretion comports with the guidelines, or any deviation is adequately justified in writing, this Court will not disturb the trial court's ruling in this regard.[11] However, a trial court's discretion is not unlimited. The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.[12]

Donald argues that the method used by the DRC in calculating child support was arbitrary, leading to an arbitrary amount. The DRC set out three considerations for his determination of the appropriate level of support: (1) the reasonable needs of the children; (2) the standard of living enjoyed by the parents; and (3) a mathematical projection of the child support guidelines. Donald agrees that the first two criteria

6. CR 52.01.

7. KRS 403.211(2).

8. KRS 403.212(5).

9. *Redmon v. Redmon,* Ky.App., 823 S.W.2d 463 (1992).

10. *See Pegler v. Pegler,* Ky.App., 895 S.W.2d 580 (1995).

11. *Commonwealth v. Marshall,* Ky.App., 15 S.W.3d 396, 400–01 (2000).

12. *Goodyear Tire and Rubber Co. v. Thompson,* Ky., 11 S.W.3d 575, 581 (2000); *Commonwealth v. English,* Ky., 993 S.W.2d 941, 945 (1999).

are appropriate. However, he notes that the DRC found very little evidence regarding the actual needs of the children or the lifestyle which the children would have enjoyed had the parents remained married. Rather, Donald contends that the DRC based the amount of child support almost entirely on his mathematical extrapolation from the child support guidelines.

As pointed out by both Donald and Sharon, the Kentucky Child Support Guidelines are based on the "Income Shares Model." The basic premise of this model is that a child should receive the same proportion of parental income that the child would have received if the parents had not divorced.[13] A review of the Kentucky child support table further shows that it is based upon the assumption that as parental income increases, the proportion of income spent on child support decreases.[14]

The more difficult question is whether child support should continue to increase at the same rate when parental income exceeds the highest amount set out in the guidelines. Sharon takes the position that this Court should adopt a "share the wealth" approach. Other courts adopting this approach have held that children are entitled to share in the fruits of one parent's good fortune after a divorce.[15] While support must be reasonable under the circumstances, what amount is "reasonable" is defined in relation to a child's "needs" and varies with the circumstances and resources of the parties. The standard of living to which a child is entitled will be measured in terms of the standard of living attainable by the income available to the parents rather than by evidence of the manner in which the parents' income is expended and the parents' resulting lifestyle.[16] Under this "share the wealth" model, the trial court may determine the reasonable needs of the children by mathematically calculating child support over and above the maximum guidelines without entering specific findings as to the needs of the children and their standard of living.[17]

 We reject this approach and have great difficulty with using a projection of the child support guidelines as the primary basis for calculating child support. An increase in child support above the child's reasonable needs primarily accrues to the benefit of the custodial parent rather than the children.[18] In addition, this approach

---

13. *See Voishan v. Palma,* 327 Md. 318, 609 A.2d 319 (1992); *In re Marriage of Nimmo,* 891 P.2d 1002 (Colo., 1995). *See also* Laura W. Morgan, *Child Support Guidelines: Interpretation and Application,* § 407(b)(2) (1999 Supp.).

14. An examination of the child support table in KRS 403.212 bears out this model. Where the combined monthly adjusted parental gross income is $1,000.00, the base child support for two children is $303 .00, or 30.3%; At $5,000.00, the base child support is $1,010.00, or 20.2%; At $10,000.00, the base child support is $1,515.00, or 15.15%; And at the highest income on the chart, $15,000.00 per month, the base child support is $1,844.00, or 12.23%. In this case, the DRC's calculation of the base monthly support works out to approximately 6.1% of Donald and Sharon's combined gross income ($3,584.00 / (57,000 ± 1,500) = .0612). This percentage of income is about one-half of the percentage used at the highest income level of the child support table.

15. *Harris v. Harris,* 168 Vt. 13, 714 A.2d 626, 633 (1998).

16. *White v. Marciano,* 190 Cal.App.3d 1026, 1032, 235 Cal.Rptr. 779, 782 (Cal.App. 2 Distr., 1987).

17. *Jones v. Jones,* 472 N.W.2d 782, 784 (S.D., 1991).

18. *Rodriguez v. Rodriguez,* 834 S.W.2d 369, 372 (Tex.App., 1992).

effectively transfers most of the discretionary spending on children to the custodial parent. Furthermore, a strict reliance on linear extrapolation could result in vast increases in child support unwarranted by the children's actual needs.[19] Beyond a certain point, additional child support serves no purpose but to provide extravagance and an unwarranted transfer of wealth. While to some degree children have a right to share in each parent's standard of living, child support must be set in an amount which is reasonably and rationally related to the realistic needs of the children. This is sometimes referred to as the "Three Pony Rule." That is, no child, no matter how wealthy the parents, needs to be provided more than three ponies.[20]

We recognize that the DRC did not use a straight-line extrapolation to calculate Donald's child support obligation. Rather, as noted above, the DRC applied a considerably lower percentage to the parents' combined income above $15,000.00 than the child support table uses. Indeed, we cannot say that the amount of child support ordered by the trial court was unreasonable *per se* considering Donald's income and other resources. Nevertheless, the DRC set child support based almost entirely on the mathematical calculation. In the absence of any other supporting findings or evidence in the record, we must conclude that the amount set by the DRC was arbitrary.

We do not agree with Donald that the highest applicable amount set by the guidelines is the presumptively correct amount of support. To the contrary, once the trial court finds a valid basis under KRS 403.211(3) for deviating from the guidelines chart it has considerable discretion in setting child support above the guidelines. Had the legislature intended to make the highest award in the schedule the presumptive basic support obligation in all cases with combined monthly income over $15,000.00, it would have so stated and would not have granted the trial judge discretion in fixing those awards.

At the same time, we must note that discretion is a two-edged sword. The trial court may not substitute a mechanical calculation for the exercise of its discretion. While such a calculation may be a useful tool in determining an appropriate amount of child support, the amount reached through such a calculation is not entitled to presumptive weight. In this case, we believe that the DRC gave presumptive weight to the amount reached through his calculation.

■ At a minimum, any decision to set child support above the guidelines must be based primarily on the child's needs, as set out in specific supporting findings.[21] There was no evidence that the needs of the children decreased since Donald's child support was adjusted in 1994. But likewise, the DRC found very little evidence that the needs of the children had increased since 1994. Sharon contends that the evidence regarding the children's counseling and private school education expenses supports the DRC's conclusion. However, the DRC considered those issues separately from the motion to increase child support.

■ In determining the reasonable needs of the children, the trial court should also take into consideration the standard of

19. *Ball v. Peterson,* 912 P.2d 1006, 1014 (Utah App., 1996).

20. *Matter of Marriage of Patterson,* 22 Kan. App.2d 522, 920 P.2d 450, 455 (1996).

21. *Stringer v. Brandt,* 128 Or.App. 502, 506–07, 877 P.2d 100, 102 (1994).

living which the children enjoyed during and after the marriage. The fundamental premise of the income shares model is that a child's standard of living should be altered as little as possible by the dissolution of the family. Consequently, the concept of "reasonable needs" is flexible and may vary depending upon the standard of living to which they have become accustomed.[22]

▮▮▮▮ Any assessment of the child's reasonable needs should also be based upon the parents' financial ability to meet those needs. Factors which should be considered when setting child support include the financial circumstances of the parties, their station in life, their age and physical condition, and expenses in educating the children.[23] The focus of this inquiry does not concern the lifestyle which the parents could afford to provide the child, but rather it is the standard of living which satisfies the child's reasonable and realistic needs under the circumstances. Thus, while a trial court may take a parent's additional resources into account, a large income does not require a noncustodial parent to support a lifestyle for his children of which he does not approve.[24]

▮▮▮▮ Our recitation of factors which a trial court may consider in modifying child support above the guidelines is by no means exhaustive. Rather, the court should take into account any factors which affect the reasonable needs of the child under the circumstances. Since Sharon seeks a modification of an existing child support award, the trial court may factor in any increase in the cost of living. The trial court may also take into account the period of time that the children reside with each parent in setting child support.[25] So long as there is evidence in the record and a reasonable basis for setting child support above the guidelines, this Court will not interfere with the trial court's discretion. But we hold that a trial court abuses its discretion when it relies primarily on a mathematical calculation to set child support without any other supporting findings or evidence.

Accordingly, we vacate the order of the Jefferson Family Court increasing Donald's child support obligation to $3,475.00 per month, and we remand this matter for a further hearing and findings as set out in this opinion. The trial court's order denying Donald's motion for a reduction in child support is affirmed.

ALL CONCUR.

▮▮▮▮

---

22. *Harris v. Harris, supra; White v. Marciano, supra.*

23. *Voishan v. Palma,* 327 Md. at 329, 609 A.2d at 324–25.

24. Donald claims that the trial court "usurped his parental authority to make lifestyle choices for his children." Yet a child is not expected to live at a minimal level of comfort while the noncustodial parent is living a life of luxury. Moreover, Donald has not provided any evidence that his standard of living has diminished, or what lifestyle he would deem appropriate for his children.

25. *Downey v. Rogers,* Ky.App., 847 S.W.2d 63 (1993).