DIXON, JUDGE:
Appellant, Travis Wilson, appeals from an order of the Ohio Family Court granting the motion of Appellee, Stacy Inglis, to modify child support and ordering him to pay $4,000 per month in support. For the reasons set forth herein, we vacate the family court's order and remand for further *379 proceedings consistent with this opinion.
The parties herein are the biological parents of a minor son, B.K.R., born in 2003. The parties were never married, nor have they ever cohabitated. Wilson is a dentist and also has other business interests in Beaver Dam and Owensboro, Kentucky. Inglis once worked for Wilson as a dental hygienist. In 2005, Wilson admitted paternity in a petition seeking custody of B.K.R. The parties ultimately entered into an agreement wherein they assumed joint custody of B.K.R. and Wilson agreed to pay Inglis $867.00 per month in child support.
In February 2014, Inglis filed a motion to modify child support. Shortly thereafter, Wilson agreed to increase his support obligation to $1,257 a month. Nevertheless, on May 11, 2015, the family court held an evidentiary hearing on Inglis's motion. Therein, Inglis testified that she and B.K.R., then eleven years old, lived with her two children from a previous relationship as well as her fiancé. At that time, she was employed as a dental assistant, working approximately twenty hours per week. In addition, Inglis worked approximately five hours a week supplying magazines to Walmart stores. Inglis then presented a list of B.K.R.'s alleged needs at that time. Such included additional monies for food and activities; funds to participate in various sports and travel teams; a bigger house with his own bedroom, bathroom, study room and game room; a basketball pad; a pool; a dog; and fenced back yard. Inglis stated that she had recently purchased a vehicle but desired a newer, more reliable model so that she could safely transport B.K.R. to his various activities. Inglis did not provide any details as to the actual costs of any items she believed should be included in B.K.R.'s reasonable needs, only stating that she believed he deserved to "have more." On cross-examination, Inglis conceded that neither her twenty-year-old unemployed son nor her fiancé financially contributed to the household expenses.
During the hearing, Wilson testified that his adjusted gross income for 2014 was $630,036.00. Said income was derived from his dental practice, rental income, farming, and other business interests. However, Wilson claimed he owed $4.5 million in debt. Wilson stated that he paid $1,600 per month in child support for his two other children in addition to what he paid Inglis for B.K.R.'s support. Wilson additionally paid B.K.R.'s monthly insurance payment in the amount of $250 as well as ninety percent of any medical co-pay. Wilson claimed that he had paid various athletic expenses for B.K.R. as well as had purchased clothing and other items for him.
At the close of the hearing, the family court expressed concern that it had not heard proof as to B.K.R.'s actual reasonable needs and costs associated therewith. Nevertheless, the family court, noting that child support had not been increased in over ten years with the exception of Wilson's agreement to raise it to $1,257 a few months before the hearing, ruled that an increase was appropriate to cover additional expenses of B.K.R. Accordingly, the family court ordered that child support should be increased beyond the child support guidelines to $1,600 a month because of the parties' disparate incomes, Inglis's testimony regarding the need for a reading tutor, and the fact that B.K.R. was getting older and wanting to participate in more sporting activities. On July 17, 2015, the trial court entered an order reflecting its oral rulings from the bench.
On November 22, 2016, Inglis filed a pro se motion to again modify child support. Therein, she stated:
*380 I have researched the actual amount of expenses more extensively than I did for the previous modification hearing. The amount of child support no longer adequately supports the child due to the child's age and necessities of living. I ask the court to revise child support to $4,365.00 per month to support B.K.R.'s needs.
In addition, Inglis listed the following as B.K.R.'s reasonable needs:
a. Housing-$1,000 per month
b. Nutritious food-$600 per month
c. Dependable vehicle-$500 per month
d. Vehicle maintenance-$150 per month
e. Proper insurance for car-$200 per month
f. Gas for car-$300 per month
g. Utilities including internet-$600 per month
h. Clothing-$325 per month
i. Activities-gymnastics, sports or other extra-curricular activities-$550 per month
j. Cellular phone-$75 per month
k. Over the counter medical expenses-$50 per month
l. Gifts (birthday parties/outings for/ with other children-$50
On March 6, 2017, Inglis's motion was heard by a special judge, the prior family court judge having suddenly retired. Inglis represented herself during the hearing and introduced evidence as to B.K.R.'s increased reasonable food and clothing needs because he was growing "by leaps and bounds." Inglis further explained that her home was in need of repairs, and she believed it would be wiser for her to purchase a bigger home instead of spending money to repair her current home. Inglis provided the family court with mortgage information on several prospective homes she had located. Further, she stated that she had financial hardships in the form of credit card debt in the amount of $4,000, a "lawyer bill" in the amount of $1,500, medical bills of $2,000, and a loan she took from her parents in the amount of $6,000. Contrary to her testimony at the prior hearing, Inglis testified that the vehicle she had been using was not, in fact, hers but rather belonged to her fiancé. On cross-examination, Inglis stated that her fiancé had recently moved out from under her roof and further that, although she did not testify to such in 2015, her adult son did not work because he was disabled. Inglis did not elaborate on her son's alleged disability but did concede that he was not drawing or seeking benefits. Significantly, however, Inglis acknowledged that although she did have some increased expenses directly related to B.K.R. due to his growth, she continued to only work three days a week, and that all of her other basic living expenses had not changed since the last modification hearing.
Wilson also testified during the hearing and noted that due to a decline in business at his dental practice, as well as a reduction in corn and soybean prices, his 2015 income was down almost $300,000, and he expected his 2016 income would be similarly reduced.
On March 15, 2017, the family court entered an order granting Inglis's motion to modify child support. Therein, the court found that Inglis had demonstrated a change in circumstances that was material, substantial, and continuing as required by KRS 403.213. The family court further noted,
This Court must take into consideration the very high income of Father and look at the style of living which his income provides. It would be unfair to *381 Child were Father to provide him with a lifestyle substantially below that of Father.
Mother has presented the following monthly expenses which directly pertain to the Child: food $600, clothing $325, cell phone $75, activities including basketball training, sports, gymnastics $550, medicine $50, gifts $50. These total $1,650.
Mother has explained her need for a car. She submitted information on the car payment for an automobile, a 2013 model, as $616.13, gas for car at $200 per month, car insurance at $200 per month. These transportation expenses total $1,016. This Court finds these expenses reasonable.
Mother supplied detail as to why she needs to move from her existing home or extensively repair the house. She submitted information about two relatively modest homes in Beaver Dam priced at $127,500 and $189,000 with house payments from approximately $900 to $1300. The average of these two payments is $1,100. Mother's current utilities total approximately $600 per month, according to documentation provided. The Court recognizes that these housing expenses are not inclusive in that taxes, insurance, continuing maintenance and other expenses are not included. However, the total of these housing expenses, using the average house payment, is $1,700.
These monthly expenses for housing and transportation add up to approximately $2,700. The combined total of these expenses and the expenses directly incurred for Child are $4,350. If Mother were to provide 7% (her percentage of the total income of the parties) of these expenses or $304, the balance which Father would provide would equal $4,046.
After careful review of the documentation provided by Mother and Father, this Court finds that the reasonable needs of Child will be met by increasing Father's child support, payable to Mother, to $4,000 each month....
The family court subsequently denied Wilson's motion to alter, amend or vacate. This appeal ensued.
We review the establishment, modification, and enforcement of child support obligations for abuse of discretion. Plattner v. Plattner , 228 S.W.3d 577, 579 (Ky. App. 2007). The test for abuse of discretion is whether the trial court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." Downing v. Downing , 45 S.W.3d 449, 454 (Ky. App. 2001) (citing Goodyear Tire and Rubber Co. v. Thompson , 11 S.W.3d 575, 581 (Ky. 2000) ). "[And] generally, as long as the trial court gives due consideration to the parties' financial circumstances and the child's needs, and either conforms to the statutory prescriptions or adequately justifies deviating therefrom, this Court will not disturb its rulings." Van Meter v. Smith , 14 S.W.3d 569, 572 (Ky. App. 2000) (citing Bradley v. Bradley , 473 S.W.2d 117 (Ky. 1971) ).
In this Court, Wilson argues that the family court's finding that Inglis proved a substantial and continuing material change in circumstances warranting a $2,400 increase in child support is not supported by the record. Wilson further contends that the family court, in modifying his support obligation, abused its discretion in failing to consider either the amount of child support he pays for his two prior born children, or the amount he pays for B.K.R.'s health insurance and medical expenses. Finally, Wilson argues that the family court's conclusion that it would be unfair to B.K.R. for Wilson to support a lifestyle *382 substantially below his own was an abuse of discretion.
A party seeking modification of child support must demonstrate "a material change in circumstances that is substantial and continuing." KRS 403.213(1) ; Tilley v. Tilley , 947 S.W.2d 63, 65 (Ky. App. 1997). The burden of proof is on the party seeking the modification. See Combs v. Daugherty , 170 S.W.3d 424, 426 (Ky. App. 2005). "Under KRS 403.213(2), a change in circumstances is rebuttably presumed to be substantial if application of the child-support guidelines ( KRS 403.212 ) to the new circumstances would result in a change in the amount of child support of 15% or more." Snow v. Snow , 24 S.W.3d 668, 672 (Ky. App. 2000). If a material change in circumstances that is substantial and continuing occurs, the family court then must consider child support "anew." Giacalone v. Giacalone , 876 S.W.2d 616, 620 (Ky. App. 1994). When considering child support, the family court is guided by KRS 403.211(2), which states:
At the time of initial establishment of a child support order, whether temporary or permanent, or in any proceeding to modify a support order, the child support guidelines in KRS 403.212 shall serve as a rebuttable presumption for the establishment or modification of the amount of child support. Courts may deviate from the guidelines where their application would be unjust or inappropriate. Any deviation shall be accompanied by a written finding or specific finding on the record by the court, specifying the reason for the deviation.
KRS 403.211(3) further provides,
A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case shall be sufficient to rebut the presumption and allow for an appropriate adjustment of the guideline award if based upon one (1) or more of the following criteria:
(a) A child's extraordinary medical or dental needs;
(b) A child's extraordinary educational, job training, or special needs;
(c) Either parent's own extraordinary needs, such as medical expenses;
(d) The independent financial resources, if any, of the child or children;
(e) Combined monthly adjusted parental gross income in excess of the Kentucky child support guidelines;
(f) The parents of the child, having demonstrated knowledge of the amount of child support established by the Kentucky child support guidelines, have agreed to child support different from the guideline amount. However, no such agreement shall be the basis of any deviation if public assistance is being paid on behalf of a child under the provisions of Part D of Title IV of the Federal Social Security Act; and
(g) Any similar factor of an extraordinary nature specifically identified by the court which would make application of the guidelines inappropriate.
KRS 403.211(3) (footnote omitted).
In Dudgeon v. Dudgeon , 318 S.W.3d 106 (Ky. App. 2010), a panel of this Court held that the child support guidelines shall not be utilized to calculate child support where the parties combined monthly income is in excess of the uppermost income level of the guidelines.
Accordingly, we interpret the rebuttable presumptions found in KRS 403.213(2) as inapplicable in modification of child support cases where application of the child support guidelines have been determined unjust or inappropriate under *383 KRS 403.211(3). In these cases, the proper standard for modification of child support is found in KRS 403.213(1) and simply requires a "showing of a material change in circumstances that is substantial and continuing."
Id. at 112. KRS 403.212(5) further mandates that the family court utilize its discretion when setting child support.
The family court herein concluded that B.K.R.'s growth, his desire for private coaching, expenses related to playing on a traveling basketball team, Inglis's need for a vehicle, and the needed maintenance on Inglis's house all constituted material changes in circumstances that were substantial and continuing. However, as Wilson points out, other than B.K.R.'s growth, all of these "circumstances" were heard and largely rejected by the family court in 2015. In fact, in her 2016 petition to modify child support, Inglis essentially conceded that there had been no real change in circumstances, but rather she had "researched the actual amount of the expenses more extensively than [she] did for the previous modification hearing [in 2015]."
For example, during the 2017 hearing, Inglis testified that B.K.R. wanted to attend private coaching sessions three times a week at $20/session, and that he would also incur additional expenses if he were to play on a traveling basketball team. Essentially the same evidence, albeit with less financial specifics, was presented in 2015. Similarly, the family court herein found that Inglis's need for additional monies for a new vehicle, insurance and gas was a change in circumstances that was substantial and continuing. Again, however, she testified to the same needs during the 2015 hearing. Finally, Inglis presented evidence that her home was in need of repairs and that the money would be better spent on a new larger home. The family court agreed. Nevertheless, during the 2015 hearing, Inglis put forth exactly the same argument.
Inglis was required to "definitively establish" that "a material change in circumstances that is substantial and continuing" had occurred since the 2015 order modifying child support was entered. See Howard v. Howard , 336 S.W.3d 433 (Ky. 2011) ; KRS 403.213(1). A comparison of the parties' circumstances in 2015 and 2017, however, reveals little change other than B.K.R.'s growth and Wilson's decline in income. That Inglis produced more comprehensive financial information in 2017 than she did in 2015 does not necessarily equate to a finding that her circumstances had changed in the two years since the child support order was entered. Although the family court concluded that the changes in circumstances presented by Inglis were material, substantial and continuing, we are of the opinion that such conclusion was not properly supported by specific findings as to how Inglis's circumstances had changed since the 2015 modification order. As a result, we cannot determine whether the family court's findings are supported by substantial evidence.
We would also note that the family court cited Wilson's reduction in parenting time as a change in circumstances that was substantial and continuing. We cannot agree. The record establishes that the parties' acrimonious relationship resulted in much disagreement as to Wilson's parenting time with B.K.R. In fact, Inglis was held in contempt of court for interfering with Wilson's parenting time. As a result, Wilson eventually informed the family court that he believed it was in B.K.R.'s best interest that he voluntarily agree to limit his contact with his son in an attempt to reduce the familial friction and emotional harm to B.K.R. We do not believe that Inglis can intentionally thwart Wilson's opportunities *384 to see his son and then claim such as a change in circumstances.
We also take exception with the manner in which the family court calculated Wilson's support obligation. Relying upon the Kentucky Supreme Court's recent decision in McCarty v. Faried , 499 S.W.3d 266 (Ky. 2016), the family court noted that it believed the law had changed since the 2015 modification hearing and that Faried granted a family court much more discretion in setting child support when the combined income of the parties exceeds the highest level of the child support guidelines. Interestingly, Inglis's list of B.K.R.'s reasonable monthly needs parrots those set forth in Faried .
We would observe that Faried is distinguishable from the instant case in that it concerned the initial establishment of child support, not modification of an existing child support order, and thus did not require a finding of "a material change in circumstances that is substantial and continuing." KRS 403.213(1). "An initial establishment of child support requires no such showing." Faried at 274,. Nevertheless, we agree with the family court that application of the child support guidelines would have been inappropriate herein because Wilson's and Inglis's combined monthly adjusted parental gross income exceeds the upper level of the guidelines. Nevertheless, although the family court set forth the list of what it believed to be B.K.R.'s reasonable monthly needs, it then calculated Wilson's support obligation according to the method used under the guidelines. KRS 403.212(3). Specifically, the family court calculated that Inglis's income equaled 7% of the total available monthly income while Wilson's accounted for the other 93%. As such, the court ruled that Inglis should only be responsible for 7% of B.K.R.'s reasonable monthly expenses, or $304, while Wilson should pay the other 93%, or $4,046.
In simply calculating the percentages of the parties' income and applying those percentages to each party's responsibility for B.K.R.'s reasonable needs, we believe the family court abused its discretion. As Wilson points out, the family court made no findings concerning his child support obligation for his other two children or his responsibility for B.K.R.'s medical insurance and other expenses related thereto. While the family court is afforded wide discretion in setting child support, we believe that in the instant case, it was an abuse of that discretion to fail to consider more than the disparate income of the parties.
Finally, we agree with Wilson that the family court misinterpreted dicta in Faried in concluding that is was required to "take into consideration the very high income of Father and look at the style of living which his income provides. It would be unfair to Child were Father to provide him with a lifestyle substantially below that of Father." Although the Faried Court recognized that a trial court, in setting child support, may consider the financial circumstances of the parents and the reasonable lifestyle the child may have been accustomed to before or after a divorce, it did not overrule this Court decision in Downing , 45 S.W.3d at 449.
In Downing , a panel of this Court rejected the "share the wealth" model where child support is determined by mathematically extrapolating over and above the maximum guidelines without entering specific findings as to the needs of the children. Id. at 455 (citations omitted). This Court reasoned that a strict reliance on mathematical extrapolation of the guidelines could result in unreasonable increases in child support, which would only serve to provide extravagance and not reflect the child's actual needs. Id. at 456. Instead, we observed that, "[w]hile to some degree *385 children have a right to share in each parent's standard of living, child support must be set in an amount which is reasonably and rationally related to the realistic needs of the children." Id. Citing the decision in Matter of Marriage of Patterson , 22 Kan.App.2d 522, 920 P.2d 450, 455 (Kan. App. 1996), we referred to the analysis as the "Three Pony Rule," i.e. no child, no matter how wealthy his or her parents, needs more than three ponies. Id.
The parties herein have never married or cohabitated. Further, B.K.R.'s limited time with Wilson undoubtably weighs against him having become accustomed to Wilson's lifestyle. While Wilson is certainly obligated to contribute to the support of son's reasonable needs, we do not read Faried as requiring that he alone afford B.K.R. the same lifestyle that he has or that he essentially subsidize all of Inglis's expenses, especially given that she continues to only work part-time and has another minor child and adult child living under her roof.
We conclude that the family court failed to set forth substantial evidence supporting its finding that Inglis met her burden of demonstrating that a material change in circumstances had occurred in the two years since the prior support order was entered. As a result, we vacate the family court's order and remand for further findings. Should the family court determine that Inglis has, in fact, met her burden, it shall consider all relevant factors in setting the appropriate amount of child support.
The order of the Ohio Circuit Court is vacated, and this matter is remanded for further proceedings consistent with this opinion.
ALL CONCUR.