NOT DESIGNATED FOR PUBLICATION

No. 124,097

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
OLUFOLAJIMI O. OBEMBE,
*Appellant*,

and

ELENI GRAMMATIKOPOULOU,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; THOMAS G. LUEDKE, judge. Opinion filed February 3, 2023. Affirmed.

*Adam M. Hall*, of Thompson-Hall, P.A., of Lawrence, for appellant.

*James R. McEntire*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe L.L.C., of Topeka, for appellee.

Before CLINE, P.J., ISHERWOOD and HURST, JJ.

ISHERWOOD, J.: Olufolajimi Obembe (Father) and Eleni Grammatikopoulou (Mother) were married in 2007 and welcomed three children into the family. Father filed a divorce petition in 2016. The parties established a parenting plan and entered into a separation and property settlement agreement (Agreement) which required Father to pay $4,880 per month for child support and $4,851 per month in maintenance. The Agreement also required Father to contribute $2,000 to the children's 529 education funds each month and Mother to contribute $1,000 per month to those same funds. The

1

Agreement was incorporated into the divorce decree. Father's maintenance payments ended in October 2019, and soon after Mother moved for a modification of child support. As a result, the court increased Father's child support obligation to $8,170 and ordered that the payment be made in cash, rather than placed into the 529 accounts. Father sought to amend the judgment on the grounds that his 529 contributions constituted child support and, if they were not, he was at least entitled to a $2,000 reduction in his child support obligation. Father also requested that the court order the parties to participate in conciliation to explore a suitable investment vehicle for the children's savings as a replacement for the 529 accounts. The court denied each of Father's requests.

Father appeals and advances four allegations of error by the district court for our consideration:  (1) It calculated his child support award by disregarding the fact that Kansas uses an income shares model of child support while using the extended income formula (EIF), resulting in a windfall for Mother; (2) it determined that his 529 contributions were not child support; (3) it claimed to lack jurisdiction to modify the 529 account subsection of the parties' Agreement; and (4) it refused to order conciliation. After a review of the issues, we are not persuaded any errors occurred that warrant relief. Specifically, (1) Father's windfall arguments conflict with Kansas law and any errors made in the analysis were not included in the Child Support Worksheet; (2) the Agreement and the Kansas Child Support Guidelines are clear that Father's 529 contributions are not child support; (3) even though the court erred in finding it lacked jurisdiction to modify the Agreement's 529 subsection, the error was harmless; and (4) the court did not err in refusing to order conciliation because it appropriately determined that the parties could independently resolve the issue. Thus, the decision of the district court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother married in 2007 and welcomed three daughters to their family, twins born in 2013 and the third joined the family in 2015.

On July 28, 2016, Father filed a divorce petition alongside requests for a temporary restraining order, parenting plan, and child support. Mother counter-petitioned for divorce, a restraining order, temporary child custody, and maintenance, and a proposed parenting plan. The district court granted Mother temporary custody of the children and ordered Father to pay $6,999 in temporary child support and $3,233 in temporary maintenance each month.

The parties filed a separation and property settlement agreement and parenting plan (Agreement) with the court. Its terms dictated, among other things, that Father must pay Mother $285,656 in property equalization payments, as well as $4,880 per month for child support and $4,851 per month for maintenance. It also required Father to continue to provide health insurance for the children and pay $2,000 per month into the children's 529 accounts, while Mother contributed $1,000 per month to those accounts. That same day the court filed a decree of divorce which incorporated the Agreement.

Roughly two months later, Mother moved the court to enforce the parties' Agreement. In support thereof, Mother alleged that, contrary to the Agreement, Father shifted Mother from the "successor account owner" of the 529 accounts to the "secondary successor account owner" and designated his brother as the primary successor instead. Mother sought to be reinstated as the "successor account owner" or, alternatively, for the court to order Father to cede ownership of the accounts to Mother. Father responded and acknowledged the alterations he made but asserted that doing so did not run afoul of the terms of the Agreement.

Following a hearing on Mother's motion, the parties came to an agreement over the 529 accounts. Specifically, they determined that Father would continue as the owner of the accounts, remove his brother as a successor owner, and reinstate Mother to that role. Mother also agreed to name an individual designated by Father as the "Successor Account Owner" in the event Father died and Mother became the accounts' owner. Similarly, Father agreed to name an individual designated by Mother as the "Successor Account Owner" in the event Mother died. The court filed a journal entry memorializing the agreement.

Nearly a year later, Mother moved to modify child support and the court held a hearing on the matter on January 26, 2021. Mother testified that the spousal maintenance outlined in the Agreement ended and due to this reduction increasing Father's child support to $8,870 was warranted. Mother testified to her dual employment with Pediatric Associates in Topeka and Lawrence Pediatr6cs and her partial ownership interest in the latter. Offering her W-2s as evidence, Mother informed the court that her total income for 2020 was $240,895. By contrast, according to Mother, Father's income was roughly double that of her own as he earned over $500,000 each year between 2016 and 2020.

Mother also testified about expenses and stated that Father paid $692 per month for the children's health insurance while she paid $3,026 per month for tuition at a Lawrence Montessori school for the three children. Although she had seen a decrease in tuition expenses during school closure due to COVID-19, the fees were expected to normalize as they emerged from the pandemic. Mother explained that the parents discussed enrolling the children in a local public school instead, but Father did not want to. These conversations did not arise as a product of financial concerns but were borne of a desire to best meet their daughter's educational needs. According to Mother, a school transfer would serve a dual purpose—one of the daughters would benefit academically and Mother would save a significant amount of money.

4

Mother also addressed the 529 accounts and informed the court that, as of the date of the hearing, the account for their kindergarten aged child totaled around $83,000 and those for the twin second graders each contained roughly $130,000. Mother acknowledged the need to continue to fund the accounts but found their current funding plan excessive and would welcome a modification to its requirements. According to Mother, the parties' collective $3,000 monthly contributions were never intended to be permanent. Rather, the intent was to revisit the plan following the expiration of Father's maintenance obligations. Further, she wanted to explore the possibility of joint ownership of the accounts rather than continuing with Father as their sole owner. Finally, according to Mother, Father's 529 contributions did not constitute child support.

Mother informed the court that once all these expenses were accounted for, $3,000 in tuition and $1,000 to the 529 accounts per month, approximately $880, or around $300 per child, remained from Father's $4,880 monthly child support for her to use for discretionary spending. She supplemented her testimony with a worksheet evidencing her monthly expenses, which amounted to $16,501.

During cross-examination, Mother agreed that many expenses listed in her budget were "uniquely [hers] and not the children's," including her 401(k) contribution, charitable donations, and estimated tax payments. She also conceded that her monthly net income plus Father's current $4,880 child support payments exceeded the expenses in her monthly budget "[b]y a couple hundred" and that the increased child support she requested would expand the budget surplus.

Father then testified and requested that the court order child support payments of $5,419, rather than Mother's suggested $8,870. He advised the court that the scheme outlined in his exhibit "R" accurately reflected what the parties agreed upon about child support during conciliation. That exhibit reflects a monthly child support figure of $7,419. According to Father, the parties contemplated that Mother would receive $5,399

5

of that sum, plus a $20 enforcement fee, and would apply a $1,000 portion of it to the 529 accounts. Meanwhile, Father would use the remaining $2,000 to satisfy his own 529 contribution obligation.

Father also offered insight regarding his income. He explained that he worked as a radiologist for two employers: United Imaging Consultants (UIC), of which he was part owner, and Stat Rad for whom he worked as an independent contractor. He noted that he and Mother stipulated that his 2020 income was $668,384. Father also testified that Mother's income calculation was inaccurate and should actually reflect ownership income from both her businesses. Father speculated that if these adjustments were made, Mother's 2020 income would increase by $47,156, leading to a total of $288,051 in annual income.

Father's testimony then turned to expenses, and he asked the court to include the children's $3,026 tuition fees and $692 health insurance expenses when calculating child support on the worksheet. Father explained that, even with these expenses, he did not believe that either parent was unable to meet the children's financial needs, particularly given that during conciliation, Mother suggested that combining the child support and maintenance ($4,880 + $4,851 = $9,731) with her $140,000 of income at that time, was sufficient to meet everyone's needs. Father provided a table suggesting that his current child support proposal and Mother's current income exceeded the conciliation agreement amount by around $50,000. He noted that this projection did not include Mother's business income, and that if her projected business income was included, then his proposed amount would exceed the conciliation number by around $100,000.

Father also outlined several factors he believed the court should contemplate when ascertaining whether to apply the EIF:

6

- His proposed amount provides Mother more money than what is reflected by her expense worksheet.
- His parenting time had increased sufficiently thereby warranting a 10 percent reduction of his financial obligations
- He incurred excessive losses and divorce expenses, including a significant reduction in his ownership wages from Radiology and Nuclear Medicine, a tax debt as a result of Mother's refusal to permit him to liquidate their shared assets, and repayment of loans he was forced to secure to cover his equalization payments, among other things.

Father alleged these liabilities demanded payments totaling $3,301 per month and therefore he was entitled to a monthly reduction of $614. Yet, while these liabilities existed, Father still managed to make annual contributions to his retirement account in the amounts of $42,667 in 2018, $156,901 in 2019, and the maximum allowable deposit in 2020. In 2016, Father also took out a $40,000 loan to purchase a car. He paid between $25,000 and $26,000 for the vehicle and placed the rest of the loan into the children's 529 accounts.

Following arguments of the parties, the district court took the matter under advisement and ultimately issued a memorandum opinion. First, the court found that Mother's income in 2020 was $243,553—a number arrived at by adding her 2020 W-2 income with her 2019 ownership income. The court determined that Father's 2020 income was $668,354 based on the number stipulated to by the parties.

Next, the court made a series of findings about the appropriate form and amount of child support. It determined that an increase in child support was justified given Father's testimony that both parents' residences should provide the same standard of living. Using the EIF, the court ordered Father to pay $8,170 per month in child support. It did not find

Father's arguments that he was heavily indebted compelling, noting that Father had already made significant strides in reducing his liability and, perhaps more importantly, that those debts seemingly did not adversely impact his ability to contribute substantial amounts to his retirement funds. The court next ordered Father to make the support payment in cash rather than having a large portion of it be earmarked for the 529 accounts. Finally, the court ordered a 10 percent decrease in Father's child support based on his temporary increase in parenting time.

Father moved to alter or amend the judgment and in support essentially repackaged his earlier claims that his $2,000 contributions to the children's 529 accounts should be viewed as child support. He also asserted that the court erroneously ordered him to pay $10,170 in monthly child support, essentially arguing that he needed to pay $8,170 of the support in cash and another $2,000 in support through his contributions to their 529 accounts. He also requested that the court order the parties to confer about potentially moving the children's education funds into a different investment vehicle.

The court denied Father's request for relief. It found that his 529 contributions were not child support based on the language and format of the Agreement and explained that if the parties intended the 529 contributions to be included within Father's child support obligations, they would not be addressed under separate subsections. Next, the court declined to reduce Father's monthly payments by $2,000, noting that it did not erroneously order support payments totaling $10,170 but instead "ruled on child support and left intact the parties' responsibilities under" the Agreement. Finally, the court refused to direct the parties to confer about the appropriate educational fund investment vehicle because it believed they were willing and able to confer on the matter independently.

Father timely brought the matter to this court for a review and analysis of the district court's denial of his request to alter or amend its child support decision.

8

*The district court's application of the income shares model and extended income formula for its child support calculations was not erroneous.*

Father's first contention consists of a claim that the district court erroneously applied the child support extended income formula and disregarded the fact that Kansas' child support scheme uses an income shares model.

*Standard of Review*

While interpretation or application of the Kansas Child Support Guidelines is a question of law subject to unlimited review, a district court's order determining the appropriate amount of child support is reviewed for an abuse of discretion. *In re Marriagg of Skoczek*, 51 Kan. App. 2d 606, 607, 351 P.3d 1287 (2015). An abuse of discretion occurs where: (1) no reasonable person would take the view adopted by the district court; (2) the decision is based on an error of law; or (3) the decision is based on an error of fact. *State v. Ballou*, 310 Kan. 591, 615, 448 P.3d 479 (2019).

*Analysis*

Child support in Kansas is governed by the Kansas Child Support Guidelines (KCSG). *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 259, 452 P.3d 392 (2019). Under the Guidelines, child support is calculated through tables which list the average monthly cost of raising a child, according to an economic model, based on the number of children needing support, their ages, and the parents' combined gross monthly income. Kansas Child Support Guidelines § II.C. (2022 Kan. S. Ct. R. at 102).

The schedules also include a maximum income, which is $15,500 of combined gross monthly income. Kansas Child Support Guidelines Appendix II (2022 Kan. S. Ct.

R. at 141). For times when the parents' combined monthly income exceeds $15,500, the district court may either calculate support using the schedules and assigning the parents the highest amount on the relevant table even though their true income exceeds that threshold, or it may apply the EIF. Kansas Child Support Guidelines § III.B.3. (2022 Kan. S. Ct. R. at 108). The district court must consider using the EIF if the parties' income exceeds the schedule cap, but it need not ultimately use it. See *In re Marriage of Patterson*, 22 Kan. App. 2d 522, Syl. ¶ 2, 920 P.2d 450 (1996); see also *State ex rel. DCF v. Bidzimou*, No. 111,536, 2015 WL 2342875, at *4-5 (Kan. App. 2015) (unpublished opinion) (providing a more detailed overview of Kansas child support calculations).

Here, both parties agree that the EIF applied because their combined monthly income exceeded $70,000. Father, however, argues that the district court erred when making its award calculation because it mistakenly concluded that Mother currently received $854 per month in cash, which Father contends results in a windfall for Mother. As Mother notes, Father is not truly disputing the court's use of the income shares model but its analysis of the amount its final order leaves for Mother's discretionary spending.

In its March 2021 memorandum decision, the district court explained that no matter how Mother budgeted her monthly income of $16,500, under the existing child support order Father contributes $854 per month for the non-educational needs of the children. Though the court did not offer an illustration of its arithmetic, Father asserts that the $854 figure emerges after subtracting the children's $3,026 tuition cost and Mother's $1,000 529 contribution obligation from Father's total support payment of $4,880. He contends this calculation is erroneous for three reasons.

First, he suggests that the court erred by subtracting a prospective tuition cost from the retrospective child support award. While Mother testified that the children's average monthly tuition payment was $2,522 in 2020, it was clear to the district court and from the record before us that the reduction in actual cost was only temporary as it stemmed

from the school transitioning online due to COVID-19. Mother testified that she anticipated their tuition would increase to $3,026 once school activities normalized. Moreover, both parties stipulated to using that amount. The district court did not abuse its discretion in using the updated, and stipulated to, cost of private school tuition when making its child support calculation.

Second, Father suggests that even if $3,026 is the proper tuition amount, the district court still erred because it neglected to account for the anticipated child care tax credit in its analysis. Despite conceding that the after-credit cost of $2,901 per month was appropriately used on the worksheet, Father suggests that the court's analysis was erroneous because it failed to reduce the appropriate amount. According to him, had the court done so, the calculation would have consisted of the following: $4,880 (Father's current obligation) minus $2,901 (tuition after credit) minus $1,000 (Mother's 529 contribution) equals $979 (remaining funds). Therefore, the difference between the court's implicit calculation and the calculation including the credit is Mother having an additional $125 per month to which she has unfettered access. It is unclear why this amount undermines the court's analysis and constitutes reversible error. Father's argument appears to be that the $854 amount contributed to the court's understanding that an increased award would not be a windfall because Mother's "unencumbered" award was $854. Father does not show how, had the court found the "unencumbered" award to be even greater, that it would have yielded a different outcome. Also, it cannot be overlooked that the actual calculation on the child support worksheet was correct. Father has failed to demonstrate the court abused its discretion on this matter.

Third, Father argues that the district court's analysis abandoned the income shares model because the court erroneously subtracted the entire amount of the tuition fees from Father's child support obligation when determining Mother's cash availability. Under the income shares model a district court adds any child care and insurance costs to the parents' basic child support obligation and divides the total obligation between the

11

parents based on their proportionate shares of their combined income. See *Bidzimou*, 2015 WL 2342875, at *5. The premise of this model is "that a child has the right to share in his or her parents' standard of living." 2 Elrod, Kansas Law & Practice: Kansas Family Law § 14.7 (2022 ed.).

Father contends the court should have subtracted his income share. Father's income share is 73.3 percent, while Mother's is 26.7 percent. Father's appellant brief recalculates the court's equation using 70 percent of his income, rather than the entire amount, which yields a non-educational support total of $2,395. It is this recalculation that undergirds Father's assertion that reversal is required.

The district court's award flowed from the child support worksheet which incorporates the income shares model. Thus, its award of $8,170 haled from the governing analytical structure, not an abandonment of the same as Father contends. This issue does not support a finding that the court abused its discretion. To the extent the court erred in its description or calculation of the "unencumbered" amount, such error was not the basis for the court's ultimate child support order, and as explained below the amount was based on application of the law and within the court's discretion.

Father next asserts that the award created a windfall for Mother and advances a two-part argument in support of this contention: (1) Child support awards should be needs-focused and (2) the district court's award violated the Shawnee County Family Law Guidelines.

As for the first basis, Father directs our attention to that part of the district court's March 2021 memorandum decision where it accepted that it was "notionally true" that Father's support award fulfilled the children's needs. Yet the court also then explained that it may look beyond the needs of the children when making child support determinations and cited *In re Marriage of Wilson*, No. 104,830, 2011 WL 4717202, at

12

*4 (Kan. App. 2011) (unpublished opinion), in support of its position. In *Wilson*, the court reviewed an EIF award alongside the father's argument that "the child support award was not based on any evidence regarding [the child's] *actual* reasonable needs and really is a windfall to [the mother]." 2011 WL 4717202, at *3. In resolving the matter the *Wilson* court drew guidance from two prior cases, *Patterson*, 22 Kan. App. 2d at 530, and *In re Marriage of Leoni*, 39 Kan. App. 2d 312, 180 P.3d 1060 (2007).

Turning first to *Patterson*. In that case a panel of this court held that a district court has wide discretion in determining the amount of child support when the monthly income of one of the parties exceeds the highest amount in the child support schedules. It quoted an Illinois case for the proposition that "the trial court should not limit the amount of child support to the child's 'shown needs,' because a child is not expected to live at a minimal level of comfort while the noncustodial parent is living a life of luxury." 22 Kan. App. 2d at 528 (quoting *In re Marriage of Lee*, 246 Ill. App. 3d 628, 643-44, 615 N.E.2d 1314 [1993]).

The *Wilson* court then analyzed *Leoni*. *Wilson*, 2011 WL 4717202, at *4. In that case, a panel of this court explained that when the parties' incomes are calculated above schedule, the district court should consider "the standard of living the child would have enjoyed absent parental separation and dissolution and also to ensure adequate support for upbringing the child without allowing windfalls." *Leoni*, 39 Kan. App. 2d at 323.

Based on these two cases, the *Wilson* court concluded:

> "[W]hen a district court is confronted with a case such as this, it must, in the exercise of its discretion, consider the extended-income formula and balance several factors, such as the needs of the child with the expected standard of living for children of families with very large incomes, and avoid awarding windfalls to the parent receiving child support." *Wilson*, 2011 WL 4717202, at *4.

13

Father rejects this interpretation of the Kansas Child Support Guidelines. He suggests that the *Patterson* court erred in drawing support from *Lee* because, unlike Kansas, Illinois follows a flat percentage rate, rather than a schedule, for determining the amount of child support. *Patterson*, 22 Kan. App. 2d at 528. The Kentucky and Kansas child support rubrics share many features, including the use of the income shares model, a schedule with a maximum combined gross monthly income, and a calculation method to be used when it is necessary to go beyond the schedule's cap. But Father nevertheless suggests that the Illinois child support scheme does not focus on the children's needs because the awards are based on a simple percentage calculation of income, while the KCSG are clear that the award aims to support a child's day-to-day needs. Kansas Child Support Guidelines § II.A. (2022 Kan. S. Ct. R. at 101).

Father looks to a Kentucky case to bolster his argument, *Downing v. Downing*, 45 S.W.3d 449 (Ky. Ct. App. 2001). The father in *Downing* argued that the district court erred by applying a projection or a linear extrapolation of the child support guidelines as its main basis for setting the amount of child support, which required the Kentucky Court of Appeals to resolve whether child support should continue to increase at the same rate when parental income exceeds the highest amount set out in the guidelines. In answering the question, it determined the lower court erred because it largely relied on a rigid mathematical calculation, rather than consideration of the child's needs, and found that "[a]n increase in child support above the child's reasonable needs primarily accrues to the benefit of the custodial parent rather than the children." 45 S.W.3d at 455.

Taken together, Father's arguments that (1) *Patterson* erred by relying on *Lee* and (2) this court should find *Downing* persuasive, invite this court to depart from *Patterson, Leoni,* and *Wilson,* a line of sound authority relied on by several cases. See, e.g., *In re Marriage of Poggi*, No. 121,012, 2020 WL 5268841, at *8 (Kan. App. 2020) (unpublished opinion) (Kansas law is clear that child support is not based solely on the actual needs of the child, but mainly depends on the parents' income and a child support

14

award based on the parents' ability to pay may be upheld even if it exceeds the actual needs of the child.); *Ottley v. Ottley*, No. 111,925, 2015 WL 5036766, at *5 (Kan. App. 2015) (unpublished opinion) ("Kansas law does not focus solely on a child's demonstrable needs to guide a district court's discretionary application of the extended income formula."); *In re Marriage of Guha*, No. 119,312, 2020 WL 3023389, at *6 (Kan. App. 2020) (unpublished opinion) (quoting the *Ottley* court's discussion that a child's needs are not the only factor that should guide the district court).

We decline Father's invitation to depart from these cases for two reasons. First, his argument that *Patterson* inappropriately relied on *Lee* is unpersuasive. In choosing to quote *Lee,* the *Patterson* court acknowledged that Illinois did not use a schedule to determine child support. *Patterson*, 22 Kan. App. 2d at 528. Moreover, contrary to Father's contention, the *Patterson* court did not reject the KCSG's requirement to focus on needs but simply explained that the analysis may look to additional factors as well. 22 Kan. App. 2d at 530-31.

Second, we do not find the *Downing* analogy persuasive because that court's holding arose out of a concern that the lower court only relied on the mathematical formula and failed to make any findings about the full spectrum of the children's needs. *Downing*, 45 S.W.3d at 456. Kansas law, on the other hand, is clear that district courts need not make explicit findings on EIF calculations. *Madrigal*, 2020 WL 4909822, at *6. Father's claim of error fails.

Even if it could be said that the district court was restricted to consideration of the children's basic needs, Father still could not prevail. The district court, in its March 2021 memorandum order, provided a need-based explanation for its child support order. It cited Mother's testimony that an increase in child support would make it easier for her to afford "a safe car, a safe backyard, and possibly additional extra-curricular activities," and noted that the increased amount would provide a necessary cushion for unforeseen

15

expenses. See *Wilson*, 2011 WL 4717202, at *6 (noting that "the district court's written findings demonstrate that the court did not take a pure income-sharing approach in setting the amount of child support").

We acknowledge Father's points that Mother received $285,000 in equalization payments, her income had increased since the initial child support award, and that he provided uncontroverted testimony that both parents had similar standards of living at home. But these points are unavailing because the district court heard this testimony and concluded that the increase of a cash award was appropriate. We will not and, frankly, cannot substitute our factual findings for those of the district court. See *Ottley*, 2015 WL 5036766, at *5 ("An appellate court should not second guess any credibility determinations or the weight afforded the evidence by the district court.").

The second component in Father's windfall argument is that the district court's child support award deviates from Shawnee County Family Law Guidelines § 6.3(B) (2013 ed.), because it ordered cash payments rather than placement into a joint fund. He contends the following sentence supports this position:

> "If the parties' combined earnings exceed the amounts shown on the child support schedules, the court encourages deposit of funds into trusts or joint signature accounts to accumulate funds to be used for the benefit of the child as the parties agree rather than large payments from one parent to the other." Shawnee County Family Law Guidelines § 6.3(B).

The plain language of the Guidelines is clear that placing the payments into an account are encouraged, rather than mandatory. Neither prong of Father's windfall argument substantiates his claim of error.

Kansas courts have not precisely defined what constitutes a windfall in the context of a child support order. Father suggests that the court's March 2021 child support order

16

is simply a thinly veiled spousal maintenance award because Mother intends to use the award on personal expenses. Even so, as demonstrated by our findings thus far, the primary purpose underlying the district court's child support award was to provide the children with an adequate, reasonable, and accustomed standard of living with Mother as their custodial parent. See *Ottley*, 2015 WL 5036766, at *5 (rejecting a windfall argument because although both parties each had considerable incomes, the evidence supported the inference that a failure to use the extended income formula would lower the child's standard of living in her mother's home); *Guha*, 2020 WL 3023389, at *7 (rejecting a windfall argument because the district court mulled over all the evidence, including the parties' incomes, their historical use of the formula, and the child's standard of living). Contra *Madrigal*, 2020 WL 4909822, at *8 (rejecting a windfall argument because one party failed to present record cites that the other parent was taking vacations without the children and generally using child support to support her lifestyle).

We reject Father's contention that the district court abused its discretion in this case. To the contrary, in solidarity with *Wilson*, the court appropriately considered the full spectrum of the children's needs and their expected standard of living. *Wilson*, 2011 WL 4717202, at *4; see also *Madrigal*, 2020 WL 4909822, at *7 (noting courts have "'very wide discretion'" when determining above-schedule child support awards).

*The district court properly concluded that Father's 529 account contributions did not constitute child support.*

Father frames this argument in two somewhat different ways. First, he offers the straightforward contention that the district court erred when it determined that his 529 account contributions were not child support. Second, he asserts that even if we find that the contributions were not child support, error is still detectable in the district court's failure to reduce his child support payments by the amount of the monthly contributions.

17

Because Father's challenges merit different standards of review, we must analyze them under two subsections.

*Father's 529 account contributions are not child support.*

The district court arrived at its conclusion following an analysis of the parties' separation agreement. The parties disagree about the appropriate standard of review. Father contends that it presents a mixed issue of fact and law. Mother, on the other hand, asserts that it should be reviewed for an abuse of discretion.

*Standard of Review*

"The interpretation of a separation agreement is a question of law that [this court] review[s] without any required deference to the district court's interpretation." *In re Marriage of Johnston*, 54 Kan. App. 2d 516, 526, 402 P.3d 570 (2017) (citing *Einsel v. Einsel*, 304 Kan. 567, 579, 374 P.3d 612 [2016]). "Separation agreements are subject to the normal rules of contract law." *In re Marriage of Hudson*, 39 Kan. App. 2d 417, 426, 182 P.3d 25 (2008) (citing *Drummond v. Drummond*, 209 Kan. 86, 91, 495 P.2d 994 [1972]). This rule holds true even if a separation agreement is incorporated into a divorce decree. *Hudson*, 39 Kan. App. 2d at 426.

"'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013) (quoting *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 [2011]). A contract interpretation "'should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. [Citation omitted.]'" *Waste Connections*, 296 Kan. at 963.

18

All the same, if this "court determines that a written contract's language is ambiguous, extrinsic or parol evidence may be considered to construe it." *Waste Connections*, 296 Kan. at 963. The question of whether a written instrument is ambiguous is a question of law subject to de novo review. 296 Kan. at 964. "A contract is ambiguous when its language is susceptible to more than one reasonable interpretation." *Johnston*, 54 Kan. App. 2d 516, 526, 402 P.3d 570 (2017).

*Analysis*

The parties make various arguments related to how this court should characterize the 529 contributions. For clarity, we took the liberty of separating the arguments into two separate categories: Kansas Child Support Guidelines and caselaw, and the parties' Agreement.

### 1. *Kansas Child Support Guidelines and Caselaw*

Father asserts that he could not find a definition for child support within Kansas caselaw. So he directs us to language from K.S.A. 2021 Supp. 23-36,102(bb), which is Kansas' version of the Uniform Interstate Family Support Act (UIFSA), and a 10th Circuit case discussing a provision from the Federal Bankruptcy Code. He suggests that these resources properly define child support as financial support paid, pursuant to an order, for the support of the needs of a child.

Section II.A. of the KCSG provides that the purpose of child support is as follows:

"The purpose of child support is to pay for and provide for the needs of the child whether the child lives with a parent or a third party. The needs of the child include direct and indirect expenses related to the day-to-day care and well-being of the child." Kansas Child Support Guidelines § II.A. (2022 Kan. S. Ct. R. at 101).

19

At least two other panels of this court have relied on this definition. See *In re Marriage of Thomas*, 49 Kan. App. 2d 952, 957, 318 P.3d 672 (2014) (directly quoting section II.A); *Bidzimou*, 2015 WL 2342875, at *4 ("Child support is intended to cover expenses related to the day-to-day care and well-being of the child—direct expenses like food, clothing, school, and entertainment, as well as indirect expenses like housing, utilities, and transportation.").

The Guidelines also define both direct and indirect expenses.

Direct expenses

"shall include those fixed expenses paid directly to a third party, such as a school, church, recreational club, or sports club to allow participation in an activity or event, or to attend school. Direct expenses also include all necessary supplies and equipment purchased to support such activity." Kansas Child Support Guidelines § II.A. (2022 Kan. S. Ct. R. at 101).

Indirect expenses

"are those expenses that benefit the child but are not paid directly for their personal needs. These include food (excluding school lunches), transportation, housing, or utilities. The indirect expenses are usually borne by the respective parents within their own household and are not shared." Kansas Child Support Guidelines § II.A.2. (2022 Kan. S. Ct. R. at 102).

Notably, the language emphasizes that support is designed to assist with day-to-day expenses, and neither definition encompasses educational accounts or college funds. Though the definition for direct expenses references education, when read in context, particularly the discussion of school lunches, we find its language is intended to address K-12 education. Father's 529 contributions, which in this case are savings accounts for

future educational expenses, do not meet the day-to-day requirement. Accordingly, the KCSG language supports a finding that Father's 529 contributions are not child support.

Moving beyond the KCSG language, both parties shepherded us toward caselaw which they believe supports their respective interpretations of child support. At first blush, one of Mother's cases, *In re Marriage of Lask*, No. 122,147, 2020 WL 5849366 (Kan. App. 2020) (unpublished opinion), seemingly carries some measure of relevance and persuasive value. In that case, the district court ordered the father to pay the mother $3,159 in child support, and then increased his support payment by an additional $2,000, which the mother was to hold in trust and reasonably invest. The order allowed the mother to spend half of the trust money without discussing the expenditures with the father. On appeal, the father argued that the mother misused the money and therefore he had a right to return of the funds under a theory of unjust enrichment. This court rejected the father's assertion because he failed to appreciate that the $2,000 monthly trust fund contributions fell under the umbrella of the overall child support that he was ordered to pay. Thus, any return of those funds would constitute an improper retroactive child support modification. 2020 WL 5849366, at *13. Though *Lask* suggests that vehicles like a 529 account may be considered child support, the father's $2,000 payments in that case were placed into an account specifically for child support. By contrast, Father's payments here were described in the Agreement as contributions specifically to "Educational Accounts." Second, the mother in *Lask* could access and use half of the funds without first securing the father's approval. Here, Mother may not access the 529 account funds for some alternative purpose without incurring significant financial penalties. See *JW v. RJ*, 146 Haw. 581, 589, 463 P.3d 1238, 1246 (Ct. App. 2020) (citing an SEC document suggesting that "if 529 account withdrawals are not used for qualified higher education expenses or tuition for elementary or secondary schools, they will be subject to state and federal income taxes and an additional 10% federal tax penalty on earnings"); *Berens v. Berens*, 260 N.C. App. 467, 470, 818 S.E.2d 155 (2018) (explaining parents would pay a

21

penalty if they withdrew 529 account money to purchase a vacation home). Thus, *Lask* offers minimal guidance for resolving this issue.

Father highlights a passage from *Allison v. Allison*, 188 Kan. 593, 601-02, 363 P.2d 795 (1961), where the court noted that the child support statute in effect at the time was "sufficiently broad to authorize a trial court to make provision for the college education of a child, where the evidence shows a plan for such education, as here, and ability on the part of a parent, such as the appellant in this case, to provide such education." 188 Kan. at 602. For two reasons we find *Allison* lacks the persuasive value Father seeks to assign to it. First, it pre-dates the KCSG. See 2 Elrod, Kansas Law and Practice:  Kansas Family Law § 14.2 (explaining that the Kansas Legislature directed the Kansas Supreme Court to adopt statewide guidelines in 1986). Second, while *Allison* suggests that child support may be used to fund college savings accounts, we decline to afford that language the blanket interpretation that all college savings funds are properly classified as child support.

Father also relies on *Patterson*, 22 Kan. App. 2d at 527-28, where this court cited a law journal article written by Washburn University School of Law Professor Linda Elrod. The referenced passage addresses above-schedule child support determinations and ends with the following recommendation from Professor Elrod:  "Hopefully, parents with incomes above the charted amounts will set up trusts or educational funds for their children." 22 Kan. App. 2d. at 527-28 (quoting Elrod, *Kansas Child Support Guidelines: An Elusive Search for Fairness in Support Orders*, 27 Washburn L.J. 104, 125 [1987]).

Finally, Father directs our attention to section 6.3(B) of the Shawnee County Family Law Guidelines, which reads as follows:

> "Section III.B.3 of Administrative Order No. 261 provides a formula to calculate support when the total income is greater than the schedules. The use of this formula is

discretionary. If the parties' combined earnings exceed the amounts shown on the child support schedules, the court encourages deposit of funds into trusts or joint signature accounts to accumulate funds to be used for the benefit of the child as the parties agree rather than large payments from one parent to the other. Examples of how these funds can be used are for college, purchase of automobiles, educational trips and other major expenses benefitting the child."

Professor Elrod's recommendations and the Shawnee County Family Law Guidelines suggest that the better practice for higher income earning couples is to establish accounts devoted expressly to large, future expenses. Yet while *Allison, Lask*, Professor Elrod's writings, and the Shawnee County District Court's Guidelines reveal that funding arrangements similar to that between Mother and Father may be considered child support under certain circumstances, none of these sources convey that Father's 529 contributions are definitively classified as child support.

### 2. *The Parties' Agreement*

The second lens through which we analyze this issue requires an interpretation of the Agreement. In our view, the format and language of that document suggest that the parties did not intend for Father's 529 contributions to be considered child support. Structurally, the parties intentionally drafted the Agreement where subsection N addresses "Child Support," and immediately thereafter, subsection O addresses "Contributions to Educational Accounts," and governs the parents' 529 contributions. The subsection for child support has no language which tends to suggest that Father's child support obligation is partially satisfied by his payments to the educational funds, and no language in the section designated for educational accounts reflects that such payments are properly credited toward child support. See also *Razorback Contractors v. Board of Johnson County Comm'rs*, 43 Kan. App. 2d 527, 540, 227 P.3d 29 (2010) ("'A court is not at liberty to revise, modify, or distort an agreement while professing to construe it, and has no right to make a different contract from that actually entered into by the

23

parties.'") (quoting 17 Am. Jur. 2d, *Contracts*, § 242 pp. 627-29 [1964]). Had the parties intended for the Agreement to have such a construction they could have easily included such clarifying language. They did not and it is well outside the authority of this court to now do so on their behalf.

When these contract provisions are read in harmony, we find the Agreement of the parties is unambiguous and evidences a clear intent for child support payments to be viewed separately from their 529 account contributions. See *In re Marriage of Soenksen*, No. 108,085, 2013 WL 3455796, at *8 (Kan. App. 2013) (unpublished opinion) (affirming a district court's construal of a settlement agreement that read provisions in harmony, rather than in isolation); *In re Marriage of Moler*, No. 119,113, 2019 WL 3367994, at *8-10 (Kan. App. 2019) (unpublished opinion) (noting that "[t]he district court should have enforced the supplemental child support agreement as written" when considering a provision of a separation and settlement agreement that was not required by the KCSG). Their approach tracks the KCSG and persuasive legal authority and, as such, Father's 529 contributions do not constitute child support.

*The district court properly declined to reduce Father's child support payments by $2,000.*

As previously noted, child support award amounts are reviewed for an abuse of discretion. *Skoczek*, 51 Kan. App. 2d at 607. An abuse of discretion occurs if: (1) no reasonable person would take the view adopted by the district court; (2) the decision is based on an error of law; or (3) the decision is based on an error of fact. *Ballou*, 310 Kan. at 615.

Father contends that based on the district court's order and the terms of the Agreement he is obligated to pay Mother $10,170 per month. His March 30, 2021 motion to alter or amend judgment requested that the court reduce his child support payment by $2,000 but the district court declined to do so.

Father argues that his request "was met with practical silence" and cites to *State v. Stewart*, 306 Kan. 237, 262, 393 P.3d 1031 (2017), to bolster his claim that an abuse of discretion occurred. The *Stewart* court explained that an abuse of discretion occurs when the district court fails to exercise its discretion, either because it refused to do so or because it failed to discern that it was being asked to exercise discretion. 306 Kan. at 262.

Father's reliance on *Stewart* is misplaced. The district court did not meet his request with "practical silence." It neither refused to exercise its discretion nor failed to recognize it was being asked to exercise discretion. Rather, the court explained that it would not decrease Father's child support obligation because it had ruled on child support and left Father's other obligations under the Agreement intact. The court also explained that the parties were free to modify the Agreement and reduce Father's 529 contributions. Accordingly, the court properly afforded Father's request the consideration it was due.

To sum up, we are not persuaded that the district court erred when it concluded that Father's 529 contributions are separate and distinct from his child support payments. His claim that error occurred when the district court declined to reduce his child support obligation by the amount of his 529 contributions is equally unavailing.

*The district court did not err when it determined it lacked jurisdiction to modify the parties' 529 agreement.*

In his next claim of error, Father argues that the district court mistakenly concluded it lacked jurisdiction to modify the terms of the parties' 529 agreement and advances three separate arguments to try to buttress his claim. None of his three contentions entitle him to the relief he seeks.

25

*Standard of Review*

This court has unlimited review over questions pertaining to jurisdiction. *In re Care and Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017). To the degree that this court interprets statutes, it likewise enjoys unlimited review. *Jarvis v. Dept. of Revenue*, 312 Kan. 156, 159, 473 P.3d 869 (2020). "All Kansas courts use the same starting point when interpreting statutes: the Legislature's intent controls. To divine that intent, courts examine the language of the provision and apply plain and unambiguous language as written." 312 Kan. at 159. In doing so, courts must give common words their ordinary meaning. *State v. Ryce*, 303 Kan. 899, 906, 368 P.3d 342 (2016). If the Legislature's intent is unclear from the language, a court may look to legislative history, background considerations, and canons of construction to help determine legislative intent. *Jarvis*, 312 Kan. at 159.

*Analysis*

This issue is controlled by K.S.A. 2021 Supp. 23-2712(b), which provides:

> "(b) Matters settled by an agreement incorporated in the decree, other than matters pertaining to the legal custody, residency, visitation, parenting time, support or education of the minor children, *shall not be subject to subsequent modification by the court* except: (1) As prescribed by the agreement; or (2) as subsequently consented to by the parties." (Emphasis added.)

The district court cited a case which relied on this provision when it held that it lacked jurisdiction to modify 529 account contributions. See *Johnston*, 54 Kan. App. 2d at 523.

Under the first prong of Father's three-part argument he simply reiterates his contention that his contributions constitute child support, therefore meeting the

26

requirements of the governing statute. But as we already discussed, his interpretation is incorrect.

Father next highlights different language in the statute and asserts the 529 account subsection was modifiable because it involved "matters pertaining to the . . . education of the minor children." This argument is not novel. A similar question was considered by a panel of this court in *In re Marriage of Brautman & Hardesty*, No. 107,732, 2013 WL 1457955, at *2-3 (Kan. App. 2013) (unpublished opinion). In that case, Brautman argued that the plain language of K.S.A. 23-2712(b) vested the district court with "jurisdiction to modify the parties' agreement regarding postsecondary support and education of the child." 2013 WL 1457955, at *3. This court disagreed and explained that K.S.A. 23-2712(b) "does not give the trial court jurisdiction to modify support for postsecondary education unless it is prescribed by the agreement or if the parties consent to the court's modification." 2013 WL 1457955, at *3.

Though the statute does not permit modification for college expenses, it is worth noting that, as described above, 529 accounts may be used to fund private K-12 education. See *JW*, 146 Haw. at 589. The language of subsection O does not use the phrase "college." Rather, it refers to the 529 accounts as "educational accounts." Cf. *Williams v. Williams*, No. FSTFA114021238S, 2017 WL 1334306, at *4 (Conn. Super. Ct. 2017) (unpublished opinion) ("Paragraph 4.8 of the February 2013 separation agreement expressly provides that the funds in the 529 accounts shall not be used for any purpose other than the college education of the children."). That said, both parents testified that the funds were intended to be used for college. Put differently, the parties expressly discuss the 529 accounts as investments for the children's futures, and Father never cites to any place in the record where either party suggested that the 529 contributions would be used for K-12 education. Accordingly, Father's reliance on the "matters pertaining to the . . . . education of the minor children" is unpersuasive, and the language did not provide the district court with jurisdiction to modify subsection O.

27

In his third and final step toward establishing error, Father contends the contents of subsection O provide that modification by the court is permissible and the district court erred in arriving at a contrary conclusion. Father is correct. The subsection, in relevant part, provides:

> "Husband shall deposit the sum of Two Thousand Dollars ($2,000.00) per month and Wife shall deposit the sum of One Thousand Dollars ($1,000.00) per month divided equally among these accounts *until further order of the Court*, the further agreement of the parties, or the emancipation of the children." (Emphasis added.)

Father also cites to the district court's memorandum decision, where it explained that "the language of the settlement agreement in subsection O" revealed that "the Court may modify the 529 contributions . . . ." The district court, however, continued by pursuing a flawed analysis and explaining that, since the Agreement was a contract, the court could only modify a provision if it dealt with child support, custody, or parenting time.

We find the district court reached its jurisdictional conclusion in error because its analysis omitted the two exceptions in K.S.A. 2021 Supp. 23-2712(b). The statute allows for modification of any issue in a settlement agreement if it is prescribed by the agreement or subsequently consented to by the parties. K.S.A. 2021 Supp. 23-2712(b). See *In re Marriage of Doud and Modrcin*, 59 Kan. App. 2d 244, 257, 480 P.3d 800 (2020) ("When a matter has been settled by a mediation agreement and incorporated into the divorce decree, a court generally cannot modify that order unless the parties consent or the agreement permits modification."). Here, the Agreement's language is clear that a court may modify subsection O. Cf. *In re Marriage of Patry*, No. 66,887, 1992 WL 12944511, at *3 (Kan. App. 1992) (unpublished opinion) ("The separation agreement does not indicate modification by the court is allowed. Therefore, the court lacks the power to modify any provisions of the agreement except the provisions concerning the

parties' minor children."). Accordingly, the court erred when it found that it did not have jurisdiction to modify the 529 account agreement.

A similar error occurred in *In re Marriage of Sinks*, No. 110,966, 2014 WL 4627600, at *1-2 (Kan. App. 2014) (unpublished opinion). There, both parties agreed that the district court erred when it determined it was without jurisdiction to modify child support and maintenance. On appeal, the mother argued the error was harmless, but this court disagreed and found that the district court "should have determined whether a material change in circumstances occurred in order to modify [the father's] support obligations." 2014 WL 4627600, at *2. This court observed that the district court failed to undertake the necessary fact-finding related to the father's changed circumstances, and since reviewing courts are prohibited from engaging in fact-finding, the error was not harmless. 2014 WL 4627600, at *2.

A different outcome is warranted here because, unlike *Sinks*, the district court's memorandum order conveys that even if it found it had jurisdiction, it would not modify the 529 agreement because the parties were capable of independently doing so. As Mother notes, "it wasn't just that the court felt that it lacked the power to modify these amounts, but felt that such modifications was unnecessary under the facts of the case." So there is no question of whether it would modify the Agreement. Thus, even if the court had not reached an erroneous conclusion about jurisdiction, the outcome of the decision would not have changed which translates to a finding of harmless error. See *In re L.M.B.*, 54 Kan. App. 2d 285, 309, 398 P.3d 207 (2017) (noting that, as for statutory harmless error, this court "must find that there is no reasonable probability that the error affected the outcome").

We note that Mother also offers two responses to Father's jurisdictional argument. She first points out that Father never sought a modification but simply requested "to reclassify educational fund payments as child support." This assertion reflects a partially

29

correct understanding of the motion that the court's April 2021 memorandum decision considered. The motion included Father's requests to recharacterize the 529 payments as child support or, alternatively, alter the child support award by decreasing the payment by $2,000. But the district court's finding that it did not have jurisdiction occurred after the district court refused to reduce Father's child support obligation. Therefore, Mother's argument is unpersuasive.

Second, Mother observes that Father failed to invoke the dispute resolution process outlined in subsection M of their Agreement. That provision notes that any disputes between the parties on issues other than child support "shall be submitted to conciliation." Her observation is accurate, and we address that matter more extensively under the next issue.

To reiterate our conclusion on this claim, although the district court erred in finding it lacked jurisdiction to modify subsection O of the Agreement, the error was harmless because it also explained that it would not have modified the Agreement even if it found it had jurisdiction. Thus, there was not a reasonable probability the error affected the decision's outcome.

*The district court properly declined to order the parties to conciliation for discussing an alternative investment tool for their 529 contributions.*

Father's motion to amend included a request for the district court to direct the parties to confer about the possibility of transitioning their educational contributions from a 529 account to another investment device. The court denied his request and explained that Mother already expressed a willingness to discuss this issue. Thus, from the court's perspective, the parties were primed to reach an agreement absent court intervention. Father contends the denial was erroneous and an abuse of the court's discretion.

30

*Standard of Review*

This court reviews a district court's refusal to order specific performance of a contract provision for an abuse of discretion. *Hochard v. Deiter*, 219 Kan. 738, 740, 549 P.2d 970 (1976). An abuse of discretion occurs if: (1) no reasonable person would take the view adopted by the district court; (2) the decision is based on an error of law; or (3) the decision is based on an error of fact. *Ballou*, 310 Kan. at 615.

*Analysis*

Father correctly notes that he made this request to the court on two separate occasions, during his testimony at the hearing in January 2021 and again in the motion to amend that he filed three months later. According to Father, these repeated requests illustrate that the district court erred when it declined to enforce subsection M of the Agreement and order conciliation.

Subsection M, in its entirety, reads as follows:

"M. <u>Dispute Resolution.</u> Disputes between the parties, other than child support disputes, shall be submitted to conciliation with such costs to be divided equally between the parties. Notice therefore shall be by certified mail from either parent to the other at their last known address.

"In the dispute resolution process:

"1. Preference shall be given to carrying out the terms of this Separation and Property Settlement Agreement and Parenting Plan.
"2. Unless an emergency exists, the parents shall use the designated process to resolve disputes relating to the implementation of the plan, except those related to financial support.
"3. A written record shall be prepared of any agreement reached in conciliation and shall be provided to each party.

"4. If the court finds that a parent has used or frustrated the dispute resolution process without good reason, the court shall award attorneys' fees and financial sanctions to the other parent.

"5. The parties have the right of review from the dispute resolution process to the district court."

We do not find Father's argument persuasive. Again, the 529 contributions are not child support. Thus, Father needed to submit to this dispute resolution process. Subsection M closely mirrors the Shawnee County Family Law Guidelines for dispute resolution. Specifically, section 5.16(A) of those Guidelines provides:

"When disagreements occur regarding the child, both parents shall make every effort to openly discuss options to resolve the disputes. If the disagreement cannot be resolved or if conflicts continue, parents shall enter into a dispute resolution process with the costs of the process shared equally between the parents, unless otherwise ordered by the Court, before either parent may file a motion or otherwise resort to court intervention."

Subsection M of the Agreement likewise reflects that the parties must submit the dispute to conciliation. It does not contemplate an initial petition to the court. Rather, the court will only get involved when one party has frustrated the process or when the parties' resolution demands review.

The court properly exercised its discretion when it declined to order specific performance of subsection M. Father offers no evidence proving that he first sought to submit the 529 account issue to conciliation but was somehow stonewalled. Rather, the record reflects Father simply used two separate vehicles to request that the court order conciliation, his oral testimony, and a motion to alter or amend, neither of which comports with the requirements of subsection M. See *Razorback*, 43 Kan. App. 2d at 540 ("'A court is not at liberty to revise, modify, or distort an agreement while professing to construe it, and has no right to make a different contract from that actually entered into by the parties.'").

32

The record makes clear that the parties have yet to even explore the possibility of making some form of adjustment to the accounts outlined in subsection O of the Agreement. Until they attempted conciliation as required under subsection M, Father prematurely concluded that the parties had a dispute requiring intervention from the court. Accordingly, we decline to find the court abused its discretion by merely enforcing the terms of the Agreement.

Affirmed.